**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **MARC BROWNE, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-cv-667-ALM-KPJ** |
| | § | |
| **CIOX HEALTH LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

**JOINT MOTION TO GIVE NOTICE OF PROPOSED CLASS ACTION
<u>SETTLEMENT AND BRIEF IN SUPPORT</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................... iii

INTRODUCTION ............................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .......................................................3

I.     SUMMARY OF PROPOSED SETTLEMENT............................................................4

        A.     The Settlement Class, Proposed Class Representatives, and Class Counsel ....................................................................................4

        B.     The Payments to Settlement Class Members........................................5

        C.     Releases................................................................................................8

        D.     Notice ...................................................................................................8

        E.     Opt-Out Rights.....................................................................................8

        F.     Objections to the Settlement ................................................................9

        G.     Class Representative Service Awards....................................................9

        H.     Attorneys' Fees and Expenses .............................................................9

II.     THE COURT SHOULD APPROVE GIVING NOTICE OF THE PROPOSED SETTLEMENT BECAUSE IT WILL LIKELY BE ABLE TO APPROVE IT ..............10

        A.     The Proposed Settlement Is Procedurally Fair....................................11

        B.     The Relief Provided by the Settlement Is Adequate and Well Within the Range of Reasonableness........................................................................14

        C.     The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiffs or Any Segment of the Settlement Class....................................................................................17

        D.     The Settlement Does Not Excessively Compensate Lead Counsel .......................19

III.     THE COURT SHOULD APPROVE GIVING NOTICE OF THE PROPOSED SETTLEMENT BECAUSE IT WILL LIKELY BE ABLE TO CERTIFY THE SETTLE-MENT CLASS....................................................................................20

        A.     Standards Applicable to Class Certification ........................................20

B.    The Settlement Class Meets the Requirements of Rule 23(a) ...............................20

    1.    Rule 23(a): Numerosity Is Satisfied...........................................................20

    2.    Rule 23(a)(2): Commonality Is Satisfied....................................................21

    3.    Rule 23(a)(3): Typicality Is Satisfied ........................................................21

    4.    Rule 23(a)(4): Lead Plaintiffs Are Adequate.............................................22

C.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ..........................24

    1.    Common Questions of Law or Fact Predominate........................................24

    2.    A Class Action Is a Superior Method of Adjudication ................................25

IV.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHODS OF GIVING NOTICE TO THE CLASS BECAUSE THEY SATISFY DUE PROCESS AND RULE 23 .........................................................................................................................26

A.    The Proposed Notice Plan Satisfies Due Process and Rule 23 ..............................26

B.    The Contents of the Proposed Class Notice Satisfy Due Process and Rule 23 ....................................................................................................................29

V.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...........................30

VI.    CONCLUSION..................................................................................................................30

## **TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Allen v. HealthPort Technologies,  LLC, n/k/a CIOX Health, LLC,*
     Case No. 12-CA-012154-K (Fla. 13th Cir.) ...........................................................14

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997)..............................................................................................20,24,26

*Browning v. Yahoo! Inc.,*
     2007 WL 4105971 (N.D. Cal., Nov. 16, 2007) ........................................................29

*Castano v. American Tobacco Co.,*
     84 F.3d 734 (5th Cir. 1996) ....................................................................................26

*Claudet v. Cytec Ret. Plan,*
     2020 WL 3128611, at *5 (E.D. La. 2020) ...............................................................13

*Cotton v. Hinton,*
     559 F.2d 1326 (5th Cir. 1977) ................................................................................10

*Cruson v. Jackson National Life Insurance Company,*
     2021 WL 3702483 (E.D. Tex. June 4, 2021)...........................................................19

*Cunningham v. Kitchen Collection, LLC,*
     2019 WL 2865080 (E.D. Tex. July 3, 2019) ...........................................................19

*General Telephone Co. v. Falcon,*
     457 U.S. 147 (1982)................................................................................................22

*In re Beef Indust. Antitrust Litig.,*
     607 F.2d 167 (5th Cir. 1979) ..................................................................................27

*In re Chinese-Manufactured Drywall Products Liability Litigation,*
     424 F. Supp. 3d 456 (E.D. La. 2020).......................................................................26

*In re Combustion Inc.,*
     968 F. Supp. at 1133 (W.D. La 1997)......................................................................19

*In re Corrugated Container Antitrust Litig.,*
     643 F.2d 195 (5th Cir. 1981) ..................................................................................11,15

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.,*
     4 F. Supp. 3d 94 (D.D.C. 2013)...............................................................................16

**Cases**                                                                     **Page(s)**

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...............................................................12,24,26

*In re Lease Oil Antitrust Litigation* (No. II),
    186 F.R.D. 403 (S.D.Tex.1999)....................................................................... 19-20

*In re OCA, Inc. Sec. & Derivative Litig.,*
    2008 WL 4681369 (E.D. La. Oct. 17, 2008) ...................................................11,14

*In re Pool Prods. Distrib. Mktg. Antitrust Litig.,*
    310 F.R.D 300 (E.D. La. 2015)..............................................................................14

*James v. City of Dallas,*
    254 F.3d 551 (5th Cir. 2001) ................................................................................22

*Jenkens v. Trustmark National Bank,*
    300 F.R.D. at 302 (S.D. Miss. 2014 ) ...................................................................19

*Johnson v. Brennan,*
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)......................................................19

*Klein v. O'Neal, Inc.,*
    705 F. Supp. 2d 632 (N.D. Tex. 2010) .................................................................16

*Lundell v. Dell, Inc.,*
    2006 WL 3507938 (N.D. Cal., Dec. 5, 2006)........................................................29

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir.1983) .................................................................................15

*Marcus v. J.C. Penney Co.,* 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016)
report and recommendation adopted in full,
2017 WL 907996 (E.D. Tex. Mar. 8, 2017) .................................................................20

*McAdams v. Robinson,*
    26 F.4th 149 (4th Cir. 2022) ................................................................................29

*McPhail v. First Command Fin. Planning, Inc.,*
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................................................16

*Miller v. Glob. Geophysical Servs.,*
    2016 WL 11645372 (S.D. Tex. 2016) ...................................................................19

**Cases**                                                                    **Page(s)**

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ...................................................................10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...........................................................................27

*Mullen v. Treasure Chest Casino LLC*,
   186 F.3d 620 (5th Cir. 1999) ...............................................................21

*Newby v. Enron Corp.*,
   394 F.3d 296 (5th Cir. 2004) ...............................................................11

*Ramirez v. J.C. Penney Corp., Inc.*,
   2017 WL 6462355 (E.D. Tex. Nov. 30, 2017) ........................................19

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ...........................................................11,15

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
   91 F. Supp. 2d 942 (E.D. Tex. 2000) ....................................................18

*Slade v. Progressive Security Insurance Co.*,
   856 F.3d 408 (5th Cir. 2017) ...............................................................22

*Slipchenko v. Brunel Energy, Inc.*,
   2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ...........................................18

*Stirman v. Exxon Corp.*,
   280 F.3d 554 (5th Cir. 2002) ...............................................................21

*Stott v. Capital Financial Servs, Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011) ..................................................... 12-13

*U.S. Commodity Futures Trading Commission v. Senen Pousa, et al.*,
   Order Approving Claims Process, Notice Procedures, and Bar Date,
   Dkt. 101 (W.D. Tex., Aug. 11, 2015) ................................................. 28-29

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ...............................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...........................................................................21

**Cases**                                                                 **Page(s)**

*Welsh v. Navy Federal Credit Union,*
    2018 WL 7283639 (W.D. Tex. Aug. 20, 2018)........................................22

*Wingo v. Martin Transp.*, Inc.,
    2018 WL 6334312, at *9 (E.D. Tex. Dec. 5, 2018)...............................28


**Statutes and Administrative Codes**                                     **Page(s)**

Texas Administrative Code, 22 TAC 160.1..............................................5

Texas Administrative Code § 165.2(e)(2)(A)........................................18

Texas Health and Safety Code § 241.154(b)(3)....................................17

V.T.C.A., Health & Safety Code §241.001 .............................................5

**Rules**

Fed. R. Civ. P. 23(a) ............................................................ 20-21

Fed. R. Civ. P. 23(a)(2)..............................................................21

Fed. R. Civ. P. 23(a)(3)...........................................................21-22

Fed. R. Civ. P. 23(a)(4)...........................................................22-23

Fed. R. Civ. P. 23(b)(3)...................................................... 1,20,25-26

Fed. R. Civ. P. 23(e) .............................................................2,3,11

Fed. R. Civ. P. 23(e)(2)...................................................... 11-12,14,15

Fed. R. Civ. P. 23(e)(2)(d) ........................................................14,17

Fed. R. Civ. P. 23(f)...................................................................

Fed. R. Civ. P. 26 ....................................................................4

Fed. R. Civ. P. 33 ....................................................................4

**<u>Treatises</u>**

McLaughlin on Class Actions § 5:81 (18th ed.) (2021) ..................................................28

Newberg on Class Actions § 11.25...................................................................................11

Newberg on Class Actions § 13:12 (5th ed. 2022) ........................................................10

Newberg on Class Actions § 13:13 (5th ed. 2022) ........................................................10

The Effects of Plain Language Drafting on Layperson's Comprehension of
Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia)
(on file with the University of Georgia Library) ...........................................................27

Plaintiffs Marc Browne and Terri Adley ( "Plaintiffs"), individually and on behalf of a class of similarly situated persons, and Defendant Ciox Health, LLC ("Ciox") jointly move this Court for an Order (1) granting the parties leave to give notice of their proposed class action settlement because it finds that it will likely be able to approve the proposed settlement and to certify the proposed settlement class pursuant to Fed. R. Civ. P. 23(b)(3); (2) for the purposes of sending notice to the Class, appointing as Class Counsel Roger L. Mandel of Jeeves Mandel Law Group, P.C., Scott R. Jeeves and Kyle W. Woodford of The Jeeves Law Group, P.A., and Craig E. Rothburd of Craig E. Rothburd, P.A.; (3) for the purposes of sending notice to the Class, appointing Plaintiffs Marc Browne and Teri Adley as class representatives; (4) approving the proposed notice plan and notice forms and directing the parties to provide notice to the proposed Settlement Class in accordance with same; (5) appointing American Legal Claim Services, LLC, to serve as the settlement administrator; and (6) scheduling the final approval hearing and related dates and deadlines.

## **INTRODUCTION**

This litigation is brought on behalf of all persons: (1) who requested copies of medical records from a Texas hospital or physician, (2) to whom the copies of records were produced by Ciox on behalf of the hospital or physician, (3) for the copies, Ciox charged them fees based upon the legally allowable charges for providing paper copies of the records ("paper rates"), (4) who had requested  production of the copies in electronic format and/or Ciox produced the copies to them in electronic format through its ePortal, (5) Ciox charged them paper rates rather than the lower legally allowable charges for providing copies of the records in electronic format ("electronic rates"),  and (6) who personally paid for the requested copies.

 Plaintiffs allege that they and the other members of the Class were legally and

contractually entitled to receive copies of the records at the electronic rates and that they are entitled to recover the difference between such rates and the greater paper rates they paid based on breach of contract, or, alternatively, money had and received. Ciox denied such liability and asserted numerous affirmative defenses as to liability and damages.

Notwithstanding the positions of the Parties, Plaintiffs, on behalf of the Class[1], have entered into a "Settlement Agreement and Release"[2] ("Settlement") of this complex medical records class overcharge action (the "Action") with Ciox. As explained herein, the parties respectfully submit that the Court will likely be able to approve the Settlement, which falls well within the range of possible approval, and to certify the proposed Settlement Class, such that the Court should authorize the Parties to send notice of the proposed Settlement to the Settlement Class. The parties also submit that the proposed notice plan and forms will provide the best notice practicable under the circumstances and will fully satisfy the requirements of due process and Rule 23(e).

The Settlement requires Defendant to pay the settlement costs (as further set forth herein) which shall be deemed to be paid on behalf of itself and all Texas Hospitals, Texas Clinics, and the Released Parties as consideration to settle the claims set forth in the Complaint and resolve all Released Claims. Defendant shall pay up to $1,850,000.00 (the "Settlement Fund"), which will pay for the claims of the Class Members who timely submit Valid Claims deemed eligible under the terms of the Agreement and for other applicable expenses. The Parties have agreed that each of the Plaintiffs will be paid $2,500 out of the Settlement Fund as class representative service awards and that the costs of notice and settlement administration and Class Counsel's fees and expenses will also be deducted from that fund.

---

[1] All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Settlement Agreement.
[2] Attached hereto as Exhibit 1.

As discussed below, the Settlement is based on a thorough review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, it was the product of arm's length settlement negotiations between experienced counsel, and it contains no facial deficiencies. Plaintiffs' Counsel and Plaintiffs, as class representatives, have concluded, based upon the foregoing, and considering the risks, uncertainties, burdens, and costs entailed by further prosecution of their claims, as well as the substantial benefits the Class will receive, that a resolution and compromise on the terms set forth in the proposed Settlement Agreement is fair, reasonable, adequate, and is in the best interests of the proposed Class. In addition, the proposed Class Notice advises Class Members of the key elements of the Settlement, and the proposed notice program is the best practicable under the circumstances and complies with the requirements of due process and Fed. R. Civ. P. 23(e).

## NATURE AND STAGE OF THE PROCEEDINGS

This Action commenced on September 13, 2019, when Plaintiffs filed the original class action complaint in this Court. ECF No. 1. Specifically, the operative complaint alleged that Ciox improperly charged persons who sought copies of medical records from Texas Clinic(s) or Texas Hospital(s) (or had copies of medical records requested by some other person pursuant to their authorization) from September 13, 2015, through certification (the "Class Period"). Ciox denied the claims, moved to dismiss the complaint, and plaintiffs filed a response. ECF Nos. 8 and 13.

Plaintiffs engaged in extensive pre- and post-suit investigation and fact discovery. This investigation included, among other things, review and analysis of: (i) publicly available information, including press releases, news articles, and other public statements issued by or concerning Ciox; (ii) research reports issued by financial and industry analysts concerning Ciox; (iii) other publicly available information and data concerning Ciox; (iv) documents obtained from plaintiff

law firms showing the charges they paid to Ciox; (v) documents produced by Ciox and over 3,000,000 sets of data Ciox produced and explanations provided by Ciox regarding same as part of its Rule 26 disclosures and/or as part of informal discovery during settlement negotiations; (vi) Ciox's responses to Rule 33 interrogatories; and (vii) numerous data analysis exchanges between the Parties.

This took place both before and after this Court granted the parties' Joint Agreed Motion to Administratively Close Case Pending Settlement Discussions. ECF No. 38. After over a year and a half (or over 550 days) of complex data exchanges and discussions between counsel, the Named Plaintiffs, on behalf of the Class, have reached a Settlement Agreement with Ciox. Through the exchange of substantial information, the Parties have a well-developed understanding of the strengths, weaknesses and risks of the claims asserted in the Action. Based upon this investigation, the Parties have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate for Plaintiffs and the Class.

## I.   SUMMARY OF THE PROPOSED SETTLEMENT

A.   <u>The Settlement Class, Proposed Class Representatives, and Class Counsel</u>

Under the terms of the Settlement, the proposed Settlement Class is defined as:

> all Persons with Qualifying Requests who fall within Settlement Subclass A and Settlement Subclass B, as defined herein. Excluded from the Settlement Class are (i) Ciox, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors and officers of Ciox, (ii) any and all Persons that paid for the requested copies of medical records pursuant to a specific pricing agreement or rate different from the applicable Electronic Rate, and (iii) the Judge signing the Final Approval Order and Judgment, any judge or justice considering the Action on appeal or remand (if applicable), and the current spouses and all other persons within the third degree of consanguinity to such judges/justices.

SA IV ¶ 36.

Under the terms of the Settlement, Settlement Subclass A is defined as:

> all Persons who, on one or more occasions during the Class Period, (i) sought copies of medical records from a Texas Clinic(s) or Texas Hospital(s), or had the copies of medical records requested by some other Person pursuant to their authorization, (ii) specifically requested, in the applicable request letter that the copies of medical records be delivered in electronic format, (iii) were charged more than the applicable Electronic Rate, (iv) subsequently paid Ciox more than the applicable Electronic Rate, and (v) were not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 37.

Finally, under the terms of the Settlement, Settlement Subclass B is defined as:

> all Persons who, on one or more occasions during the Class Period, (i) sought copies of medical records from a Texas Clinic(s) or Texas Hospital(s), or had the copies of medical records requested by some other Person pursuant to their authorization, (ii) did not request, in the applicable request letter that the copies of medical records be delivered in electronic format, but otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to their registration for the same, (iii) were charged more than the applicable Electronic Rate, (iv) subsequently paid Ciox more than the applicable Electronic Rate, and (v) were not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 38.

Plaintiffs Marc Browne and Teri Adley are the Proposed Class Representatives, and Roger L. Mandel of Jeeves Mandel Law Group, P.C., Scott R. Jeeves and Kyle W. Woodford of The Jeeves Law Group, P.A., and Craig E. Rothburd of Craig E. Rothburd, P.A are designated as Class Counsel. *Id*. ¶ 9.

B.    The Payments to Settlement Class Members

The Settlement requires Ciox to pay the settlement costs set forth herein which shall be deemed to be paid on behalf of itself and all Texas Hospitals,[3] Texas Clinics,[4] and the Released

---

[3] "Texas Hospitals" means the health care facilities and/or hospitals, as defined under Chapter 241, Subtitle B, Title 4 of the Health and Safety Code, V.T.C.A., Health & Safety Code §241.001 *et seq.*, for which Ciox contracted and provided release of information services in Texas during the Class Period, identified in the list attached hereto as Exhibit A, and each and all of their respective parent companies, affiliates, subsidiaries, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys, and shareholders.

[4] "Texas Clinics" means the health care facilities and/or physicians, as defined under Chapter 160, Part 9, Title 22 of the Texas Administrative Code, 22 TAC 160.1 *et seq.*, for which Ciox contracted and provided release of information services in Texas during the Class Period, identified in the list attached hereto as Exhibit A, and each and all of their

Parties[5] as consideration under the Agreement to settle the claims set forth in the Complaint. SA IV. Ciox shall pay up to $1,850,000.00 as the Settlement Fund, which will pay for the claims of the Class Members who timely submit Valid Claims.[6]

Class Members will have either or both of two different claims based upon what type of entity the records came from: (1) a "Qualifying Hospital Request; or (2) a "Qualifying Clinic Request." A Qualifying Clinic Request means either a Type A Request or a Type B Request by a Person for copies of medical records from a Texas Clinic during the Class Period as follows:

a. Type A Request means: a request by a Person for copies of medical records from a Texas Clinic during the Class Period for which the requestor (i) specifically requested, in the applicable request letter, that the copies of medical records be delivered in electronic format, (ii) was charged more than the applicable Electronic Rate[7], (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

b. Type B Request means: a request by a Person for copies of medical records from a Texas Clinic during the Class Period for which the requestor (i) did not request, in the applicable request letter, that the copies of medical records be delivered in electronic format, but the requestor otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to its registration for the same, (ii) was charged more than the applicable Electronic Rate, (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 31.

A Qualifying Hospital Request means either a Type A Request or a Type B Request by a Person for copies of medical records from a Texas Hospital during the Class Period as follows:

---

respective parent companies, affiliates, subsidiaries, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys, and shareholders.

[5] "Released Parties" means and includes: Ciox, the Texas Clinics, and the Texas Hospitals, and each and all of their respective parent companies, management companies, affiliates, subsidiaries, partners, holding companies, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys and shareholders.

[6] "Valid Claim" means a Proof of Claim that is: (a) fully and truthfully completed, with all of the information in the Proof of Claim identified as "required"; (b) postmarked or electronically submitted on or before the date set forth in the Proof of Claim and/or Class Notice; and, if mailed, (c) sent to the address specified in the Proof of Claim and Settlement Webpage. The Claims Administrator may require reasonable additional information from the Claimant to validate the claim. To have a Valid Claim, the Class Member must not have already been fully paid or fully reimbursed by Ciox, the Texas Hospitals, or the Texas Clinics for the Disputed Fee Amount.

[7] "Clinic Electronic Rate" is set forth in SA ¶14.

6

a. Type A Request means: a request by a Person for copies of medical records from a Texas Hospital during the Class Period for which the requestor (i) specifically requested, in the applicable request letter, that the copies of medical records be delivered in electronic format, (ii) was charged more than the applicable Electronic Rate[8], (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

b. Type B Request means: a request by a Person for copies of medical records from a Texas Hospital during the Class Period for which the requestor (i) did not request, in the applicable request letter, that the copies of medical records be delivered in electronic format, but the requestor otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to its registration for the same, (ii) was charged more than the applicable Electronic Rate, (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 32.

Settlement Subclass A members have Type A Qualifying Hospital and/or Clinic Requests, while Settlement Subclass B members have Type B Qualifying Hospital and/or Clinic Requests. Some Class members may fall into both Subclasses because some of their record requests may have been Type A Requests while others may have been Type B Requests.

The Settlement Fund remaining after deduction of Class Representative service awards, Class Counsel's fees and expenses awarded by the Court and payments of the costs of notice and claims administration shall be used to reimburse the Class Members who timely submit a Valid Claim in an amount equal to (i) One Hundred Percent (100%) of the Disputed Fee Amount (the difference between the charges based on a paper rate and the charges based on an electronic rate) paid by the members of Settlement Subclass A, less the percentage of the Settlement Fund that the Court awards to Class Counsel as the Fee and Expense Award, or (ii) Fifty Percent (50%) of the Disputed Fee Amount paid by the members of Settlement Subclass B, less the same percentage of the Class Settlement Fund that the Court awards to Class Counsel as the Fee and Expense Award. In the event the reimbursements to the Settlement Class Members who timely submit Valid Claims

---

[8] "Hospital Electronic Rate" is set forth in SA ¶24.

exceed the amount of the Settlement Fund remaining to pay Valid Claims after payment of the Fee and Expense Award, the Service Awards and Claims Administrator Fees and Expenses, such re-imbursements to the Class Members will be paid on a pro rata basis.

C.    Releases

As set forth in greater detail in the Settlement Agreement,[9] upon Final Approval, Plaintiffs and Settlement Class Members will release the Released Parties from the Released Claims.

D.    Notice

The Settlement Administrator (described below) will send the notice to the Class, send out the notices required by the Class Action Fairness Act ("CAFA"), receive and provide the initial response to communications from potential Class Members, process proofs of claims, opt-outs, and objections, make payments to the Class and prepare a declaration for the Court reporting on its activities. The Settlement Administrator will set up and monitor a webpage and telephone num-ber regarding the Settlement and, upon request from Class members, obtain from Ciox and provide to them information to assist them in identifying their claims and filling out their proof of claim forms. The Parties will cooperate with the Settlement Administrator as necessary, and Ciox shall pay the Settlement Administrator out of the Settlement Fund. SA.V. The Notice Plan is described in detail below.

E.    Opt-Out Rights

Under the terms of the Settlement, any Persons who qualify as Class Members have the opportunity to opt out of the Settlement Class. Each Person who qualifies as a Class Member who wishes to opt out of the Settlement Class shall do so by serving a written opt-out request to the Settlement Administrator, Class Counsel and Defense Counsel, via first class mail, postage pre-

---

[9] SA at 28-29.

paid, postmarked no later than the final day of the Claim Period. SA.VI.

F.     Objections to the Settlement

Any Settlement Class Member may object to any aspect of the Settlement, including Class Counsel's requested fees and expenses, and/or appear at the Final Approval Hearing. To do so, the Settlement Class Member must first file a written objection with the Court by the Objection Deadline that satisfies the requirements set forth in the Settlement Agreement and serve the objection on all Parties and the Settlement Administrator, postmarked no later than that deadline. *Id*. Further, any objector who intends to appear at the Final Approval Hearing must state such in their written Objection. *Id*. Any Settlement Class Member who does not provide a timely, written, compliant objection shall be deemed to have waived any objection. *Id*.

G.     Class Representative Service Awards

Class Counsel and Plaintiffs will seek, and Ciox agrees not to oppose, payment of a service award of Two Thousand Five Hundred Dollars ($2,500.00) to each Class Representative. The Service Awards, as approved by the Court, shall be paid to the Class Representatives within thirty (30) days of entry of the Judgment and shall be paid out of the Settlement Fund. If the Final Approval Order and Judgment does not become Final, the Class Representatives shall pay back the Service Awards to Ciox within thirty (30) days after any order disapproving the Settlement or the Class Representative Service Award becomes final. SA IV ¶ (C).

H.     Attorneys' Fees and Expenses

Class Counsel shall file an application with the Court for reasonable attorneys' fees and expenses to be paid out of the Settlement Fund. SA IV ¶ (D). Class Counsel and Plaintiffs agree not to seek more than, and Ciox agrees not to oppose, Five Hundred Thirty-Six Thousand and Five Hundred Dollars ($536,500.00) in fees, which would be 29% of the Settlement Fund. *Id*. In

addition, Class Counsel and Plaintiffs agree not to submit, and Ciox agrees not to oppose, a request for reimbursement of out-of-pocket expenses that exceeds Ten Thousand Dollars ($10,000). *Id*. The Fee and Expense Award, as approved by the Court, shall be paid to Class Counsel within thirty (30) days of entry of the Judgment and shall be paid out of the Settlement Fund. *Id*.  If the Effective Date does not occur, Class Counsel shall pay back the Fee and Expense Award to Ciox within thirty (30) days of an order disapproving the Settlement or the Fee and Expense Award becoming final.  *Id*. Entry of an order denying or reducing the requested Fee and Expense Award shall not prevent the Settlement from becoming final.

## II.    THE COURT SHOULD APPROVE GIVING NOTICE OF THE PROPOSED SET-TLEMENT BECAUSE IT WILL LIKELY BE ABLE TO APPROVE IT

Courts in this Circuit and across the country recognize a prevailing public policy in favor of class action settlements, especially in complex class actions such as this. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (finding "an overriding public interest in favor of settlement," because class actions "have a well-deserved reputation as being most complex."); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) (settlements of class actions are "'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits.' ") (citation omitted).

District Court review of a class action settlement proposal is a two-step process. Newberg on Class Actions § 13:12 (5th ed. 2022). The first step is a preliminary, pre-notification determination of whether "notice of the proposed settlement should be sent to the class." *Id*. at § 13:13. In the first step, the Court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the class. Effective December 1, 2018, Rule 23(e) was amended to, among other things, specify that the crux of a court's preliminary approval evaluation is whether notice should be provided to the class given the likelihood that the court will be able to finally

approve the settlement and certify the class. Rule 23(e)(1)(B).[10] The court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." Newberg § 11.25 (stating that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and [it] appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

At this preliminary stage, a court's review is less stringent than at the final approval stage. *See In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at \*11 (E.D. La. Oct. 17, 2008). "If the terms themselves are fair, reasonable and adequate, the district court may fairly assume that they were negotiated by competent and adequate counsel; in such cases, whether another team of negotiators might have accomplished a better settlement is a matter equally comprised of conjecture and irrelevance." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981).

A.    The Proposed Settlement Is Procedurally Fair

Rule 23(e)(2)'s first two factors "might be described as 'procedural' concerns" and "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) Advisory Committee Notes to 2018 Amendments. Courts may consider "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which]

---

[10] In connection with final approval of the Settlement, the Court will be asked to review the following core factors identified by amended Rule 23(e)(2), whether: (a) Lead Plaintiff and Lead Counsel adequately represented the class; (b) the Settlement was negotiated at arm's-length; (c) the relief provided to the class is adequate; and (d) the proposal treats class members equitably relative to each other. In assessing these core factors, the Court may also consider the Fifth Circuit's long-standing approval factors, many of which overlap with the Rule 23 factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004).

may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id*.

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). It was the product of arms-length and hard fought negotiations  which Class Counsel had the necessary factual and legal knowledge and skill and expertise to conduct, and they had more than sufficient information to assess the adequacy of the Settlement.

*First*, Class Counsel had an adequate knowledge base, both factual and legal, to negotiate the Settlement and determine that it is fair, adequate, and reasonable. Declaration of Roger L. Mandel in Support of Joint Motion to Give Notice of Proposed Settlement attached hereto as Exhibit 2 at ¶¶4, 5, 23, 24 ("Mandel Decl."). As to the legal knowledge base, before ever filing suit, Class Counsel extensively researched the Texas statutes governing the provision of medical records and the fees which can be charged for their provision and the causes of action available for charging more than the statutes allow. *Id*. ¶5. After suit began, Ciox filed a motion to dismiss to which Class Counsel responded, further informing their legal assessments. *Id*. ¶¶7-9.

As to Class Counsel's factual knowledge base, before commencing settlement negotiations, Class Counsel obtained interrogatory answers from Ciox and reviewed extensive documents produced by Ciox. *Id*. ¶11. After settlement negotiations commenced, Class Counsel engaged in substantial and protracted informal discovery, including the review and analysis of spreadsheet data regarding over 3,000,0000 records requests produced by Ciox and obtaining from Ciox detailed explanations of that data. *Id*. ¶13. This strongly supports settlement. *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,* 851 F. Supp. 2d 1040, 1065 (S.D. Tex. 2012) (finding support for settlement where "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"); *Stott v.*

*Capital Financial Servs, Inc.*, 277 F.R.D. 316, 344 (N.D. Tex. 2011) ("At this stage, the Court and the parties possess ample information with which to evaluate the merits of the competing positions.").

**Second**, the parties' settlement negotiations were conducted at arm's length by experienced counsel and hard fought. Thus, Plaintiffs' negotiation efforts weigh in favor of settlement approval. *Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *5 (E.D. La. 2020) ("hard-fought negotiation between experienced counsel" resulted in a fair, non-collusive settlement). Here, the Parties negotiated the settlement terms in the context of months of Ciox providing data, Class Counsel analyzing it, and the parties discussing and debating it. Mandel Decl. ¶¶11, 13 & 23. Class Counsel negotiated the core settlement terms with Ciox over many more months, exchanging multiple proposals. *Id*. ¶¶13 & 23. They did not negotiate the Class Representative Service Awards and the Fee and Expense Award for Class Counsel until after the rest of the terms of the Settlement had been agreed upon. *Id*. ¶14 & 23. Then, it took many more months for the parties to: (1) negotiate and draft the Settlement Agreement, including the Notice Plan, (2) negotiate and draft all of the related notice documents including the Long Form Notice, the Postcard Notice, and the Proof of Claim Form, (3) take bids for the position of and choose the Settlement Administrator, and then (4) further fine tune the Notice Plan and related notice documents with the help of the Settlement Administrator. *Id*. ¶¶14, 17 & 23.

**Third,** Class Counsel had the necessary skills, expertise, and experience to act upon their knowledge base because they have extensive experience litigating complex class actions. Roger L. Mandel and Craig E. Rothburd have been successfully litigating class action cases for over 30 and 25 years respectively. *Id*. ¶¶19-22 and Exhibits A and B thereto, the resumes of Mr. Mandel and Mr. Rothburd.

Likewise, Scott Jeeves is also a very experienced class action attorney who, in fact, previously successfully litigated a class action against this same Defendant in the State of Florida over the course of eight years. Declaration of Scott Jeeves in Support of Joint Motion to Give Notice of Proposed Settlement, attached hereto as Exhibit 3 ("Jeeves Decl.") ¶¶4-8. In August of 2012, Mr. Jeeves, along with his co-counsel, filed a class action in the State of Florida against HealthPort Technologies (now Ciox) alleging that, similar to here, Ciox was overcharging patients for copies of medical records when requested by a patient's attorney.[11] Jeeves Decl. ¶6; Mandel Decl. ¶3. Through discovery, they learned Ciox's processes for handling record requests and pricing the copies provided, which gave them useful knowledge to help evaluate the settlement in this case. Jeeves Decl. ¶7.

Accordingly, the Settlement is a product of informed, fair, and honest negotiations among sophisticated parties and experienced counsel and a by-product of extensive informal and formal discovery, which weighs heavily in its favor. *See, e.g., In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at *11 (preliminarily approving settlement reached after three years of litigation and discovery); *In re Pool Prods. Distrib. Mktg. Antitrust Litig.*, 310 F.R.D 300, 315 (E.D. La. 2015) (same).

B.    <u>The Relief Provided by the Settlement is Adequate and Well Within the Range of Reasonableness</u>

Rules 23(e)(2)(C) directs the Court to evaluate whether "the relief provided for the class is adequate, considering a variety of factors including whether the settlement considers the costs, risks, and delay of trial; whether the proposed method of distributing relief is effective; whether the attorneys' fees requested are reasonable; and whether all agreements required under Rule 23(e)(3) have been identified." Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(D) also requires that the

---

[11] *Allen v. HealthPort Technologies*,  LLC, n/k/a CIOX Health, LLC, Case No. 12-CA-012154-K (Fla. 13th Cir.).

settlement treat all class members equitably. Here, the Settlement represents a favorable result for the Class, taking into consideration all the factors outlined under Rule 23(e)(2). Furthermore, Class Counsel and Defense Counsel have proposed a plan for allocating the Settlement proceeds that ensures all Class Members will be treated equitably relative to their respective claims.

A key factor in deciding whether the Court is likely to grant approval is "whether the settlement's terms fall within a reasonable range, given the likelihood of the plaintiffs' success on the merits." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir.1983) (internal quotation marks omitted) (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir.1981)). The second, fourth, and fifth *Reed* factors, respectively, consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery." *Reed,* 703 F.2d at 172.

Here, the Settlement provides for up to $1,850,00.00 to be paid by Ciox. But for the Settlement, counsel for the Parties were committed to litigating this case through trial and beyond, if necessary. Accordingly, there were substantial risks and costs if this litigation were to proceed. Throughout the course of the litigation and settlement negotiations, Ciox vigorously contested liability, and it would have continued to do so.

Ciox filed a motion to dismiss arguing that Plaintiffs' contract claims fail because they allegedly agreed to pay what they paid, the medical records statutes at issue provided no right of private action, and the medical records statutes at issue were not express or implied terms of the patient's contracts. *See* ECF 8. Ciox also argued that Plaintiffs claims for money had and received fail because the express contracts barred such a claim. *Id*. Ciox also argued that the voluntary payment doctrine barred Plaintiffs' claims for money had and received. *Id*.

Plaintiffs filed their response (ECF No. 13), and while they believe their arguments in

response are strong and should prevail, there is no Texas case directly on point about whether plaintiffs who enter into contracts for amounts that exceed legal maximums can recover the difference via either breach of contract or money had and received. Of course, if Ciox were to have prevailed at the motion to dismiss stage, the entire Class would have received nothing.

Given the Class's risk of losing on the motion to dismiss, the Settlement Amount here represents an excellent recovery. Class Counsel, based on data provided to Plaintiffs by Ciox as part of informal discovery during settlement negotiations, learned that the maximum amount of damages the Class could potentially recover in this case is approximately $2,000.000. Mandel Decl. ¶24. Thus, by requiring Ciox to pay up to $1.85 million, the Settlement represents a recovery of approximately 92.5% of the potentially recoverable damages. *Id*. ¶¶24-26. This is a ***significant recovery*** far higher than the percentage of potential damages typically recovered by class action settlements[12], and it eliminates the risk of non-recovery should litigation continue. *Id*.

Further, the Settlement avoids the risks of prolonged and uncertain litigation, achieves a substantial recovery, and avoids the considerable expenses associated with litigating class certification, summary judgment, trial, and a lengthy appeals process. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually agreeable settlement is strengthened.").

Certainly, the experience of Mr. Jeeves in his Florida case against HealthPort (Ciox) demonstrates a high likelihood that, absent the Settlement, this case would have been litigated over

---

[12] *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the best-case scenario potential recovery" deemed reasonable); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

many years at tremendous expense. Jeeves Decl. ¶8: Mandel Decl. ¶28. That case took over eight years to conclude, required two trips to the court of appeals, and required the expenditure of a lodestar exceeding $1 million and out of pocket expenses of approximately $130,000 by plaintiffs' counsel. Jeeves Decl. ¶7. Before HealthPort (Ciox) finally settled, Mr. Jeeves had to obtain the following from the court:  granting of class certification, granting of plaintiffs' motion for partial summary judgment, denial of HealthPort's (Ciox's) motion for summary judgment, and granting of a permanently injunction prohibiting HealthPort (Ciox) from charging patients more for medical records than allowed under Florida law. *Id*.

C.   The Settlement Treats All Class Members Fairly and Does Not Improperly Grant Preferential Treatment to Lead Plaintiffs or any Segment of the Settlement Class

This Rule 23 factor requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(d).

The Settlement Agreement provides for Settlement Subclass A members to recover 100% of the Disputed Fee Amount (alleged overcharge) less attorneys' fees while Settlement Subclass B members will recover 50% of the Disputed Fee Amount less attorneys' fees. SA IV(A)(4). The difference between the two subclasses is that Settlement Subclass A members specifically requested electronic delivery of the requested copies while Settlement Subclass B members did not. SA III(B).

This difference has great legal significance, because both the statute governing hospitals and the regulation governing doctors and doctor clinics contain language strongly supporting that the lower electronic rates need only be charged if the request letter expressly requests electronic delivery, even if the copies of the records were in fact delivered electronically. Mandel Decl. ¶9. Texas Health and Safety Code § 241.154(b)(3) requires hospitals to charge the lower electronic rates if "the requested records are provided on a digital or other electronic medium *and the*

17

*requesting party requests delivery in a digital or electron medium, including electronic mail ...."*
Texas Administrative Code § 165.2(e)(2)(A) provides that "the physician responding *to a request for such information to be provided in electronic format* shall be entitled to a reasonable, cost-based fee for providing the records in electronic format" not to exceed the rate in subsection (B). *Id.*

Initially, Plaintiffs note that the 100% recovery by Settlement Subclass A members represents a great result given the risk they would recover nothing based on the arguments made by Ciox in the Motion to Dismiss. Mandel Decl. ¶26. Further, recovery of 50% by Settlement Subclass B members represents a great result given the language quoted above which seems to expressly allow charging of paper rates even for electronic copies of the records if the requesting letter did not specify delivery in electronic format. *Id.* ¶¶9-10 & 26. In the face of that language, Plaintiffs would have had to make a complicated statutory interpretation argument based on statutory structure and apparent legislative intent. *Id.* Class Counsel believe their likelihood of succeeding on that argument was considerably less than 50%, making the 50% recovery by Settlement Subclass B members an excellent result, especially given that losing the argument would have resulted in zero recovery for those Class members. *Id.*

While the Settlement Agreement also provides for modest $2,500 Class Representative Service Awards for Plaintiffs Browne and Adley, these are appropriate in class action settlements and do not represent unfair additional relief for the class representatives. *See, e.g., Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving $25,000 incentive wards to both named plaintiffs); *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *13 (S.D. Tex. Jan. 23, 2015) ("Courts commonly permit payments to class representatives above those received in settlement by class members generally.") (citations omitted).

D.    The Settlement Does Not Excessively Compensate Lead Counsel

As disclosed in the Settlement Agreement, Class Counsel will apply for reasonable attorneys' fees not to exceed $536,500, 29% of the Settlement Fund, plus reimbursement of reasonable expenses not to exceed $10,000. A fee of 29% is reasonable in light of the work performed and the results obtained. This amount is within the range of awards typically granted in class action cases in this Circuit and District. *See Miller v. Glob. Geophysical Servs.*, 2016 WL 11645372, *1 (S.D. Tex. 2016) (finding attorney's fees of one-third of the settlement fund reasonable given the "time and labor required, the novelty and difficulty of the case, the skill required to prosecute the case, the experience and ability of the attorneys, awards in similar cases, the contingent nature of the representation and the result obtained for the Class.").[13] That fee is also appropriate when considering the substantial risks Class Counsel undertook in expending the time, effort, and resources in pursuing the claims in this Action and obtaining the excellent recovery.

Through the end of May 31, 2022, Class Counsel' lodestar was already $309,000. Mandel Decl. ¶27 . That represents a current multiplier of only 1.7. *Id*. That is at the lower end of multipliers awarded in successful class settlements, whether as part of a lodestar-only award or as part of a lodestar crosscheck. *Johnson v. Brennan*, 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar."); *In re Combustion*, 968 F. Supp. at 1133 ("Multipliers ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied"); *In re Lease Oil Antitrust Litigation* (No. II), 186 F.R.D. 403 (S.D.Tex.1999) (holding that a 1.35 lodestar was "certainly on the low end of the range

---

[13] *See also Cruson v. Jackson National Life Insurance Company*, 2021 WL 3702483, at *4 (E.D. Tex. June 4, 2021) (holding a 28-29% fee "not excessive."); *Ramirez v. J.C. Penney Corp., Inc.*, 2017 WL 6462355, at *5 (E.D. Tex. Nov. 30, 2017) (holding "Class Counsel's request for a fee of 30% is not excessive."); *Jenkens*, 300 F.R.D. at 302 (approving settlement including fee up to one-third of the settlement amount and citing cases supporting such an award); *Cunningham v. Kitchen Collection, LLC*, 2019 WL 2865080, at *3 (E.D. Tex. July 3, 2019) (same).

of multipliers usually used").

Of course, Class Counsel will expend significant additional time obtaining preliminary approval, working with the Settlement Administrator and Defense Counsel on the provision of notice and administration of the claims and responding to Class member inquiries, and obtaining final approval, all of which will serve to further reduce the already modest multiplier. *Id.* Moreover, Class Members will have an opportunity to weigh in on the fee request prior to the final approval hearing.

## III. THE COURT SHOULD APPROVE GIVING NOTICE BECAUSE IT SHOULD FIND THAT IT WILL LIKELY BE ABLE TO CERTIFY THE SETTLEMENT CLASS

### A.   Standards Applicable to Class Certification

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and one of the sections of (b). *See Marcus v. J.C. Penney Co.*, 2016 WL 8604331, at *1 (E.D. Tex. Aug. 29, 2016), report and recommendation adopted in full, 2017 WL 907996 (E.D. Tex. Mar. 8, 2017) (certifying class in securities fraud action). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As discussed below, the Action satisfies all the factors for certification.

### B.   The Settlement Class Meets the Requirements of Rule 23(a)

#### 1.   Rule 23(a): Numerosity Is Satisfied

To satisfy Rule 23(a)(1), the class must be "so numerous that joinder of all members is

impracticable." Based on the number of record requests qualifying for payment under the Settlement and the maximum recoverable damages, it is reasonable to believe that the number of Class members will number in the tens of thousands. Mandel Decl. ¶15. Numerosity is thus easily satisfied. *See, e.g., Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that class of 100 to 150 satisfies numerosity requirement).

### 2.   Rule 23(a)(2): Commonality Is Satisfied

Rule 23(a)(2) requires that the class members "share at least one question of fact or law in common with each other." "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class members' claims." *In re Deepwater Horizon*, 739 F.3d at 810. The claims "must depend upon a common contention [that is] of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common questions in this case include:

> [1] whether contracts existed between Ciox and the Class;
> [2] whether those contracts incorporated the maximum charges allowed by the statutes;
> [3] whether Ciox breached those contracts by charging for paper copies rather than electronic copies; and
> [4] whether the measure of damages for that breach is the difference between what Ciox actually charged and what it should have charged for electronic copies.

ECF No. 1 at 12. Thus, commonality is easily satisfied.

### 3.   Rule 23(a)(3): The Lead Plaintiffs' Claims Are Typical

"Rule 23(a) requires that the named representatives' claims be typical of those of the class." *Langbecker*, 476 F.3d at 314. The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The test for typicality is not demanding and is satisfied if the representative plaintiff's

claims arise out of the same event or course of conduct as the other proposed class members or are based on the same legal theory. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).

In this Action, Plaintiffs' claims are typical because they all arise from the same  process for formation of contracts via payment of standard-form invoices as the rest of the Class and rely on the same Texas statutes and causes of action as the rest of the Class. Thus, Plaintiffs' claims are typical of the other Class members' claims, as they arise from the same course of events and share the same legal theories. *Welsh v. Navy Federal Credit Union*, 2018 WL 7283639, at *6 (W.D. Tex. Aug. 20, 2018) (finding that "Plaintiffs claims are typical of the claims of the proposed class because all the claims arise out of the same conduct" and "[t]he claims are also based on the same legal theory: breach of contract."); *see also General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

### 4. Rule 23(a)(4): The Class Representatives Are Adequate

The adequacy inquiry can be broken up into three subcategories: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Security Insurance Co.*, 856 F.3d 408, 412 (5th Cir. 2017). To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

As to the first "adequacy" subcategory, the competency of proposed class counsel, the named Plaintiffs chose attorneys Roger L. Mandel of Jeeves Mandel Law Group, P.C., Scott Jeeves and Kyle Woodford of The Jeeves Law Group, P.A., and Craig E. Rothburd of Craig E. Rothburd,

P.A. As the accompanying declarations demonstrate, proposed Class Counsel have extensive experience successfully prosecuting class actions and other complex cases. Mandel Decl. ¶¶19-22; Jeeves Decl. ¶4. Proposed Class Counsel have devoted a significant amount of time to this matter, possess the requisite knowledge of the applicable law and experience with complex litigation, and they are willing to commit the resources necessary to prosecute this case on behalf of the named Plaintiffs and the Settlement Class to a successful conclusion. Mandel Decl. ¶¶5, 7, 8 & 19-22. Accordingly, proposed Class Counsel satisfy the requirements of Rule 23(g).[14]

As to the second subcategory, Plaintiffs Marc Browne and Teri Adley understand the allegations made in this action and the terms of the Settlement Agreement, as well as their obligations to the proposed Settlement Class, and their commitment to prosecute this action. Mandel Decl. ¶18. Each of them read the Complaint before it was filed; confirmed their claims are based on Ciox's failure to correctly pay for medical record copies, as are the claims of all proposed Settlement Class members; confirmed their understanding of their responsibilities to the proposed class; actively participated in in the litigation through communication with counsel regarding the settlement negotiations and review and approval of the settlement terms; and they retained competent counsel with sufficient resources to prosecute this action to conclusion. *Id.*

Finally, as to the third subcategory, Class Counsel do not believe that the Class Representatives have any interests different from the interests of the rest of the Class that could constitute a conflict of interest. *Id.* Significantly, Class Representative Teri Adley is a member of Settlement

---

[14] In certifying a class, the Court must assess proposed Class Counsel's ability to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Rule 23(g) sets forth criteria that the court must consider including:

> (i)      the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims assisted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(A).

Subclass A because her request letter specifically requested production of records in electronic format. Complaint (ECF 1) ¶¶ 27 & 28 and Exhibit A thereto (ECF 1-2), the letter. On the other hand, because his request letter did not specifically request production of records in electronic format, Class Representative Marc Browne is a member of Settlement Subclass B. *Id.* ¶¶ 29 & 30 and Exhibit E thereto (ECF 1-6), the letter. Thus, the Class Representatives represented both sub-classes. Mandel Decl. ¶18, For these reasons, the "adequacy" prong is satisfied.

    C.    <u>The Settlement Class Meets the Requirements of Rule 23(b)(3)</u>

### 1. Common Questions of Law or Fact Predominate

The Court may certify a class under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The standard for establishing that common issues "predominate" is less stringent when certification is sought for the purpose of settlement, rather than litigation. In such cases, "the existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3) concerns . . . a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *In re Deepwater Horizon*, 739 F.3d at 818 (citing *Amchem*, 521 U.S. at 620). Instead, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Heartland*, 851 F. Supp. 2d at 1058 (quoting *Amchem*, 521 U.S. at 623). "So long as there is sufficient commonality to establish that the class is generally cohesive, the propriety of a settlement need not depend on satisfaction of a `predomi-nance' requirement." *Id.* (*citing* Aggregate Litigation § 3.06 cmt. A). *See also Welsh*, 2018 WL

7283639, at *7 (same).

Here, the Class is sufficiently cohesive to warrant a class action. All Class members faced the same issues. Did their contracts incorporate the statutory maximum allowable charges even though the contracts called for them to pay higher amounts? If so, did Ciox breach the contracts by collecting more than the statutory maximums? Alternatively, did the contract amounts in excess of the statutory maximums make the contracts illegal and void from their inception? If so, did the difference between what Ciox collected and the maximum charged constitute money which in equity and good conscience should be returned to Class members pursuant to the doctrine of money had and received?

Finally, Settlement Subclass B members faced on additional issue common to them: did Ciox violate the statutes by charging them paper rates when electronically delivering copies of the records even though their request letters did not specify the copies should be delivered in electronic format? These common liability issues predominate over any individual issues that could arise, such as the need to calculate Class members' damages individually. The Class's claims would rise or fall based on the same common issues.

### 2. A Class Action Is a Superior Method of Adjudication

"Superiority" requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," based upon factors including the interests of the members of the class in individually controlling the prosecution, the extent and nature of any litigation concerning the controversy already commenced by members of the class, the desirability of concentrating the litigation in a particular forum, and the management difficulties likely to be encountered. Fed. R. Civ. P. 23(b)(3). "[T]he existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3)

25

concerns: 'the likely difficulties in managing a class action.'" *In re Deepwater Horizon*, 739 F.3d at 818.

The "superiority" prong is readily met here, because "the resolution of thousands of claims in one action" (as will be accomplished here) "is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication." *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 424 F. Supp. 3d 456, 484 (E.D. La. 2020). That is particularly true.as here, where individual class members have relatively small individual damages.[15] *See In re Heartland*, 851 F. Supp. 2d at 1060 ("The most compelling rationale for finding superiority in a class action" is 'the existence of a negative value suit.') (*quoting Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)); *see also Welsh*, 2018 WL 7283639, at *7 ("Rule 23(b)(3) is the best method of adjudication for situations like these in which the potential recovery is typically so small that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation.") (quotations omitted). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (citation omitted). As such, Rule 23(b)(3) is satisfied.

## IV.    THE PROPOSED FORMS AND METHOD OF NOTICE TO THE CLASS SHOULD BE APPROVED

### A.    *The Notice Program Satisfies Due Process and Rule 23*

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

---

[15] For example, Plaintiff Adley's damages are only $52.50. Complaint, ECF 1, ¶28. Plaintiff Browne's damages are only $67.63. *Id.* ¶30.

opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed administrator, American Legal Claim Services, LLC, was selected after a lengthy process that involved numerous phone interviews and extensive email correspondence with three potential class action claim administrators who each submitted multiple bids. Mandel Decl. ¶17. Before and after receiving the bids, Class Counsel and Defense Counsel conducted multiple discussions with each of the bidders aimed at assessing their suggested methods, mediums, and depth of notice for the purpose of ultimately being able to select a bidder with the optimal campaign in terms of effectiveness, as well as cost, since the administrator would be paid from the Settlement Fund (SA IV (B)(3)); *Id*. The Parties ultimately engaged American Legal Claim Services, LLC over the other various bidders based on their optimal combination of effectiveness and cost. *Id*.

A postcard notice will be sent via U.S. mail, first class, to the persons requesting the records, who may be attorneys requesting on behalf of clients or insurance companies requesting for themselves or, in some instances, patients requesting for themselves. SA. V(D). Notice by first class mail has long been considered the gold standard for delivering notice. *In re Beef Indust. Antitrust Litig.*, 607 F.2d 167, 173 (5th Cir. 1979). Mailing summary postcard notices rather than the longform notices has more recently become not only an accepted method for sending notice, but a preferred one, because they are easier to read and generate action more frequent responses.[16]

---

[16]Research on postcard notice versus long form noticer conducted by the FJC is discussed in Shannon Wheatman, The Effects of Plain Language Drafting on Layperson's Comprehension of Class Action Notices (2001) (unpublished Ph.D. dissertation, University of Georgia) (on file with the University of Georgia Library). Draft securities notices were presented to 229 volunteer participants who were members of 27 investment clubs across the country. Only 2% of participants reported that they would carefully read a long form notice; 59% would glance at it, 12% would file it away, and 27% would throw it away without reading it. However, 43% of participants reported that they would carefully read a summary notice; 36% would glance at it, 6% would file it away; and 15% would throw it away without reading it.

The postcard notice will also be emailed to the records requestor in addition to mailing it where email addresses are contained in Ciox's records. SA. V(D). Email notice, not only as a supplement to regular mail, as here, but by itself has become a widely accepted method of giving notice. *Wingo v. Martin Transp.*, Inc., 2018 WL 6334312, at *9 (E.D. Tex. Dec. 5, 2018) (holding "Email is universally hailed as an effective communication tool and it makes little sense to pretend that it would not be helpful when sending out class notice, especially when it costs absolutely nothing.").

Notice in this case is more complicated than most because a high percentage of the claims in issue resulted from attorneys seeking records on behalf of their clients. Mandel Decl. ¶15. Depending upon who ultimately paid for the copies of the records, the attorney or the patient could be the Class member. SA ¶ 36. To avoid the necessity of attorneys having to forward the notice onto their clients (the patients) when the clients are the Class members, the settlement authorizes the attorneys and other requestors to submit proofs of claim on behalf of their clients. *Id*. ¶16. However, the requestors can easily forward copies of the postcard notice to their clients where they determine it to be necessary.

Requestors can obtain help in determining what claims they and/or the persons for whom they requested records may have by requesting information from the Settlement Administrator on all their potentially qualifying requests, including, but not limited to, invoice number(s), invoice date(s), patient name(s), names of the Texas Hospital or Texas Clinic, and amount(s) paid. SA (V); Mandel Decl. ¶16. On the Settlement Webpage, requestors/Class members can review and save or print copies of the Long Form Notice, the Settlement Agreement, key case pleadings, and the Proof of Claim Form (which can be filled-out and submitted online), all of which is considered a best practice. McLaughlin on Class Actions § 5:81 (18th ed.) (2021); *U.S. Commodity Futures Trading Commission v. Senen Pousa, et al.*, Order Approving Claims Process, Notice Procedures, and Bar

Date, Dkt. 101 (W.D. Tex., Aug. 11, 2015) (approving electronic notice of claims process and bar date for receivership); *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *4 (N.D. Cal., Nov. 16, 2007) (electronic notice "particularly suitable" where claims involve "visits to Defendants' internet websites"); *Lundell v. Dell, Inc.*, 2006 WL 3507938, at *1 (N.D. Cal., Dec. 5, 2006) (notice sent electronically and posted to website satisfied due process).

This manner of providing Class Notice, which includes sending notice by first-class mail and email, supported by a Web Page and telephone number, represents "the best notice practicable under the circumstances" and satisfies the requirements of Rule 23, due process, and all other applicable laws and rules.

B.    *The Contents of the Proposed Class Notice Satisfy Due Process and Rule 23*

Collectively, the proposed forms of Class Notice advise recipients of: (i) the nature of the litigation; (ii) the definition of the Certified Class; (iii) the Class's claims, issues, or defenses; (iv) the Settlement's terms; (v) the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair, reasonable, and adequate; (vi) the procedures for requesting exclusion from the Class or objecting to the Settlement; (vii) the procedures for entering an appearance through an attorney; (viii) the binding effect of a class judgment; (ix) the proposed plan for allo-cating the net proceeds of the Settlement; (x) the date, time, and place of the Fairness Hearing; and (xi) how to obtain additional information regarding the Settlement. SA, Exhibits B and C thereto, Long Form Notice and Postcard Notice. This would occur by a recipient of the postcard notice visiting the Settlement Webpage and reviewing the Long Form notice and/or the Settlement Agree-ment posted there. Provision of this information has been held to satisfy due process and Rule 23. *McAdams v. Robinson,* 26 F.4th 149, 155 (4th Cir. 2022).

## V.        PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

The Parties respectfully request that the Court enter the following schedule:

| | |
|---|---|
| Deadline for mailing the Notice to Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Within 30 days of the entry of the Order Directing Sending of Notice to the Class |
| Deadline for submitting objections | 120 calendar days from the entry of the Order Directing Sending of Notice to the Class |
| Deadline for requesting exclusion | 120 calendar days from the entry of the Order Directing Sending of Notice to the Class |
| Deadlines for Parties to file motion for final approval of the Settlement and for Class Counsel to file their application for fees and expenses | 135 calendar days from the entry of the Order Directing Sending of Notice to the Class |
| Deadline for Class Members who timely filed objections to the Settlement and/or the Fee and Expense Award to file responses to the final approval motion and/or the fee and expense application | 150 calendar days from the entry of the Order Directing Sending of Notice to the Class |
| Deadline for filing reply papers in support of final approval and/or application for fees and expenses | 165 calendar days from the entry of the Order Directing Sending of Notice to the Class |
| Final Approval Hearing | The first available date after 180 calendar days following the date of the entry of the Order Directing Sending of Notice to the Class by the Court |

## VI.         CONCLUSION

For all the foregoing reasons, the Parties respectfully request that the Court enter an order

approving the giving of notice to the Class as set forth herein.


Dated: June 30, 2022.                    Respectfully submitted,

                                        /s/*Roger L. Mandel* _____
                                        Roger L. Mandel (admitted *pro hac vice*)
                                        rmandel@jeevesmandellawgroup.com
                                        **JEEVES MANDEL LAW GROUP, P.C.**

2833 Crockett St
Suite 135
Fort Worth, TX 76107
T: 214-253-8300

Scott R. Jeeves (admitted *pro hac vice*)
**JEEVES LAW GROUP, P.A.**
954 First Avenue North
St. Petersburg, Florida 33705 T. (727) 894-2929
sjeeves@jeeveslawgroup.com
khill@jeeveslawgroup.com
kwoodford@jeeveslawgroup.com

Craig E. Rothburd (admitted *pro hac vice*)
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, Florida 33606
T. (813) 251-8800
craig@rothburdpa.com
maria@rothburdpa.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

This document was filed June 30, 2022, on the Court's ECF System, through which it will be served on all counsel of record.

/s/*Roger L. Mandel*
Roger L. Mandel

31