## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **MARC BROWNE, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:19-cv-667-ALM-KPJ** |
| | § | |
| **CIOX HEALTH LLC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## JOINT MOTION FOR FINAL APPROVAL
## OF PROPOSED CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ....................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 2

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ................................. 4

ARGUMENT AND AUTHORITIES ........................................................................... 4

I.     THE SETTLEMENT TERMS ............................................................................ 4

       A.     The Settlement Class ............................................................................... 4

       B.     The Payments to Settlement Class Members ........................................... 5

II.    THE COURT-APPROVED NOTICE WAS DELIVERED IN ACCORDANCE
       WITH THE NOTICE ORDER AND FULLY SATISFIED THE REQUIREMENTS
       OF RULE 23 AND DUE PROCESS ................................................................. 8

III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 10

       A.     Standards Applicable to Class Certification .......................................... 10

       B.     The Settlement Class Meets the Requirements of Rule 23(a) ............... 11

              1.     Rule 23(a): Numerosity Is Satisfied ........................................... 11

              2.     Rule 23(a)(2): Commonality Is Satisfied ................................... 11

              3.     Rule 23(a)(3): The Class Representatives' Claims Are Typical ...... 12

              4.     Rule 23(a)(4): The Class Representatives Are Adequate ............ 12

       C.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ........... 14

              1.     Common Questions of Law or Fact Predominate ....................... 14

              2.     A Class Action Is a Superior Method of Adjudication ............... 16

IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL
       UNDER RULE 23(e) AND *REED* ................................................................. 17

       A.     Standard for Granting Final Approval of the Settlement ....................... 17

B.    The Settlement Satisfies Both the Procedural and Substantiative
Requirements of Rule 23(e), as Well as the Related *Reed* Factors ......................19

1.    "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)(A)-(B) and *Reed*,
Because Lead Plaintiffs and Class Counsel Adequately Represented the
Class and the Settlement was Negotiated at Arm's Length ............................19

2.    The Settlement's Terms Are Adequate and Equitable, Satisfying
the "Substantive" Requirements of Rule 23(e)(2)(C)-(D) and *Reed* ..............21

i.    The Settlement Amount Provides "Adequate" Relief Considering
the Costs, Risks, and Delay of Trial and Appeal ................................22

ii.    Other Rule 23(e)(2)(C) Factors Support Final Approval ...................23

iii.    The Settlement Terms are Equitable ....................................................25

3.    The Opinions of Class Counsel and Plaintiffs Support Approval ..................26

V.    CONCLUSION ..............................................................................................................28

## **TABLE OF AUTHORITIES**

**Cases**                                                                                            **Page(s)**

*Allen v. HealthPort Technologies,  LLC, n/k/a CIOX Health, LLC,*
    Case No. 12-CA-012154-K (Fla. 13th Cir.) ...................................................................23

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,*
    2019 WL 387409 (S.D. Tex. 2019) ..................................................................... 18-19

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).............................................................................10,11,15,17

*Aron v. Crestwood Midstream Partners LP,*
    2016 U.S. Dist. LEXIS 152427 (S.D. Tex. 2016) ...................................................17

*Ayers v. Thompson,*
    353 F.3d 356 (5th Cir. 2004) ................................................................................17

*Billitteri v. Sec. Am., Inc.,*
    2011 WL 3586217 (N.D. Tex. Aug. 4, 2011)...........................................................27

*Castano v. American Tobacco Co.,*
    84 F.3d 734 (5th Cir. 1996) ..................................................................................17

*City of Omaha Police & Fire Ret. Sys. V. LHC Group,*
    2015 WL 965693 (W.D. La. 2015)........................................................................18

*Claudet v. Cytec Ret. Plan,*
    2020 WL 3128611 (E.D. La. 2020) .......................................................................21

*Cotton v. Hinton,*
    559 F.2d 1326 (5th Cir. 1977) ...........................................................................17,18

*DeHoyos v. Allstate Corp.,*
    240 F.R.D. 269 (W.D. Tex. 2007) ......................................................................20,22

*General Telephone Co. v. Falcon,*
    457 U.S. 147 (1982)...............................................................................................12

*Hays v. Easton Grp. Attorneys, LLC,*
    2019 WL 427331 (M.D. La. 2019) ........................................................................20

*In re Chinese-Manufactured Drywall Products Liability Litigation,*
    424 F. Supp. 3d 456 (E.D. La. 2020).................................................................16,18

## **Cases**                                                                   **Page(s)**

*In re Deepwater Horizon,*
   739 F.3d 790 (5th Cir. 2014) ...................................................11,15,16,28

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010,*
   910 F. Supp. 2d 891 (E.D. La. 2012) *aff'd sub nom.*, *In re Deepwater Horizon,*
   739 F.3d 790 (5th Cir. 2014) ......................................................... 27-28

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.,*
   4 F. Supp. 3d 94 (D.D.C. 2013) .............................................................23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.,*
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ................................... 15,16-17,20

*In re Lease Oil Antitrust Litigation* (No. II),
   186 F.R.D. 403 (S.D.Tex.1999).............................................................18

*In re Pool Prods. Distrib. Mktg. Antitrust Litig.,*
   310 F.R.D 300 (E.D. La. 2015)................................................................8

*In re Seitel Sec. Litig.,*
   245 F.R.D. 263 (S.D. Tex. 2007).........................................................20

*James v. City of Dallas,*
   254 F.3d 551 (5th Cir. 2001) ...............................................................12

*Jiangchen v. Rentech, Inc.,*
   2019 WL 5173771 (C.D. Cal 2019)................................................... 19-20

*Klein v. O'Neal, Inc.,*
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ...............................................22

*Langbecker v. Electric Data Systems Corporation,*
   476 F.3d 299 (5th Cir. 2007) ...............................................................12

*Maher v. Zapata Corp.,*
   714 F.2d 436 (5th Cir.1983) .................................................................18

*Marcus v. J.C. Penney Co.*, 2016 WL 8604331 (E.D. Tex. Aug. 29, 2016)
*report and recommendation adopted in full,*
2017 WL 907996 (E.D. Tex. Mar. 8, 2017) ................................... 10-11,26

*McPhail v. First Command Fin. Planning, Inc.,*
   2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .......................................23

**Cases**                                                                      **Page(s)**

*Melby v. America's MHT, Inc.,*
    2018 WL 10399004 (N.D. Tex. 2018).....................................................................21

*Miller v. Republic Nat'l Life Ins. Co.,*
    559 F.2d 426 (5th Cir. 1977) .............................................................................17

*Mullen v. Treasure Chest Casino LLC,*
    186 F.3d 620 (5th Cir. 1999) .............................................................................11

*ODonnell v. Harris County,*
    2019 WL 6219933 (S.D. Tex. 2019) ..................................................................22

*Quintanilla v. A & R Demolition Inc.,*
    2008 WL 9410399 (S.D. Tex. May 7, 2008) ......................................................27

*Reed v. Gen. Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) .....................................................................*passim*

*Slade v. Progressive Security Insurance Co.,*
    856 F.3d 408 (5th Cir. 2017) .............................................................................13

*Slipchenko v. Brunel Energy, Inc.,*
    2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ......................................................22

*Stirman v. Exxon Corp.,*
    280 F.3d 554 (5th Cir. 2002) .............................................................................12

*Turner v. Murphy Oil USA,*
    472 F. Supp. 2d 830 (E.D. La. 2007)............................................................ 26-27

*Unger v. Amedisys Inc.,*
    401 F.3d 316 (5th Cir. 2005) .............................................................................13

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) .................................................................................... 11-12

*Welsh v. Navy Federal Credit Union,*
    2018 WL 7283639 (W.D. Tex. Aug. 20, 2018)..........................................12,15,17

**Statutes and Administrative Codes**                                    **Page(s)**

Texas Health & Safety Code § 241.001 .................................................................5

Texas Health and Safety Code § 241.154(b)(3) ................................................25

22 T.A.C. § 160.1 .................................................................................................5

22 T.A.C. § 165.2(e)(2)(A) ...............................................................................26


**Rules**

Fed. R. Civ. P. 23(a)(1) ....................................................................................11

Fed. R. Civ. P. 23(a)(2) ....................................................................................11

Fed. R. Civ. P. 23(a)(3) ....................................................................................12

Fed. R. Civ. P. 23(a)(4) ....................................................................................13

Fed. R. Civ. P. 23(b)(3) ...............................................................11,14,15,16,17

Fed. R. Civ. P. 23(e) .................................................................................. *passim*

Fed. R. Civ. P. 23(g) .....................................................................................13,14

**Other Authorities**

Aggregate Litigation § 3.06 (American Law Institute, 2010) ......................................15

Plaintiffs Marc Browne and Terri Adley ("Plaintiffs," "Lead Plaintiffs" or "Class Representatives"), individually and on behalf of the proposed Class, and Defendant Ciox Health, LLC ("Ciox") jointly request the Court grant Final Approval of the Proposed Class Action Settlement described in detail in the Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), ECF No. 51-1, which is incorporated herein by reference, and enter the proposed Order Approving Settlement and Final Judgment filed contemporaneously herewith (or a substantially similar order approved by the Parties).

## **INTRODUCTION**

This litigation was brought on behalf of all persons: (1) who requested copies of medical records from a Texas hospital or physician, (2) to whom the copies of records were produced by Ciox on behalf of the hospital or physician, (3) for the copies, Ciox charged them fees based upon the legally allowable charges for providing paper copies of the records ("paper rates"), (4) who had requested production of the copies in electronic format and/or Ciox produced the copies to them in electronic format through its ePortal, (5) Ciox charged them paper rates rather than the lower legally allowable charges for providing copies of the records in electronic format ("electronic rates"), and (6) who personally paid for the requested copies.

Lead Plaintiffs, on behalf of the Class[1], have reached a Settlement of this complex medical records class overcharge action (the "Action") with Ciox. As a result, the Settlement requires Ciox to pay the settlement costs (as further set forth herein) which shall be deemed to be paid on behalf of itself and all Texas Hospitals, Texas Clinics, and the Released Parties as consideration to settle the claims set forth in the Complaint and resolve all Released Claims. Ciox shall pay up to $1,850,000.00 (the "Settlement Fund"), which will pay for the claims of the Class Members who

---

[1] All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Settlement Agreement.

timely submitted Valid Claims deemed eligible under the terms of the Agreement and for other applicable expenses. The Parties have agreed that each of the Plaintiffs will be paid $2,500 out of the Settlement Fund as class representative service awards and that the costs of notice and settlement administration and Class Counsel's fees and expenses will also be deducted from that fund.

There is no dispute that the proposed Settlement satisfies the standards for final approval under Federal Rule of Civil Procedure 23(e). Namely, the Settlement is based on a thorough review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, it was the product of arm's length settlement negotiations between experienced counsel, and it contains no facial deficiencies. Class Counsel and Lead Plaintiffs, as class representatives, have concluded, based upon the foregoing, and considering the risks, uncertainties, burdens, and costs entailed by further prosecution of their claims, as well as the substantial benefits the Class will receive, that a resolution and compromise on the terms set forth in the proposed Settlement Agreement is fair, reasonable, adequate, and is in the best interests of the proposed Class.

Accordingly, Plaintiffs and Ciox respectfully move the Court for an order granting their Joint Motion for Final Approval of Class Action Settlement and entering a Final Judgment.

## NATURE AND STAGE OF THE PROCEEDINGS

This Action commenced on September 13, 2019, when Plaintiffs filed the original class action complaint in this Court. ECF No. 1. Specifically, the operative complaint alleged that Ciox improperly charged persons who sought copies of medical records from Texas Clinic(s) or Texas Hospital(s) (or had copies of medical records requested by some other person pursuant to their authorization) from September 13, 2015, through certification (the "Class Period"). Ciox denied the claims, moved to dismiss the complaint, and plaintiffs filed a response. ECF Nos. 8 and 13.

2

Plaintiffs engaged in extensive pre- and post-suit investigation and fact discovery. This investigation included, among other things, review and analysis of: (i) publicly available information, including press releases, news articles, and other public statements issued by or concerning Ciox; (ii) research reports issued by financial and industry analysts concerning Ciox; (iii) other publicly available information and data concerning Ciox; (iv) documents obtained from plaintiff law firms showing the charges they paid to Ciox; (v) documents produced by Ciox and over 3,000,000 sets of data Ciox produced and explanations provided by Ciox regarding same as part of its Rule 26 disclosures and/or as part of informal discovery during settlement negotiations; (vi) Ciox's responses to Rule 33 interrogatories; and (vii) numerous data analysis exchanges between the Parties.

This took place both before and after this Court granted the parties' Joint Agreed Motion to Administratively Close Case Pending Settlement Discussions. ECF No. 38. After over a year and a half (or over 550 days) of complex data exchanges and discussions between counsel, the Lead Plaintiffs, on behalf of the Class, reached a Settlement Agreement with Ciox. Through the exchange of substantial information, the Parties have a well-developed understanding of the strengths, weaknesses and risks of the claims asserted in the Action. Based upon this investigation, the Parties have concluded that the terms and conditions of the Settlement are fair, reasonable, and adequate for Lead Plaintiffs and the Class.

Following the Court's Order Granting the Parties Joint Motion to Give Notice of Proposed Class Action Settlement and Brief in Support (the "Notice Order"), ECF No. 54, the Settlement Administrator disseminated the Class Notice in accordance with the Court's Order. No objections to and only one request for exclusion from the Settlement have been received by the Settlement Administrator or Class Counsel, either before or after the November 23, 2022, deadline for

submitting same. Under these circumstances, Final Approval of the Settlement should be granted and a Final Judgment based on the terms of the Settlement Agreement should be entered.

## STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.     Was notice of settlement delivered to the Settlement Class as ordered by the Court, and did it satisfy the requirements of Rule 23 and due process?

2.     Does the Settlement Class satisfy the requirements for certification of Rule 23(a) and (b)(3)?

3.     Should the Court approve the Settlement as fair, adequate, and reasonable and enter final judgment in accordance with the Settlement?

## ARGUMENT AND AUTHORITIES

### I.     THE SETTLEMENT TERMS

#### A.     The Settlement Class

Under the terms of the Settlement, the proposed Settlement Class is defined as:

> all Persons with Qualifying Requests who fall within Settlement Subclass A and Settlement Subclass B, as defined herein. Excluded from the Settlement Class are (i) Ciox, any predecessor, subsidiary, sister and/or merged companies, and all of the present or past directors and officers of Ciox, (ii) any and all Persons that paid for the requested copies of medical records pursuant to a specific pricing agreement or rate different from the applicable Electronic Rate, and (iii) the Judge signing the Final Approval Order and Judgment, any judge or justice considering the Action on appeal or remand (if applicable), and the current spouses and all other persons within the third degree of consanguinity to such judges/justices.

SA IV ¶ 36.

Under the terms of the Settlement, Settlement Subclass A is defined as:

> all Persons who, on one or more occasions during the Class Period, (i) sought copies of medical records from a Texas Clinic(s) or Texas Hospital(s), or had the copies of medical records requested by some other Person pursuant to their authorization, (ii) specifically requested, in the applicable request letter that the copies of medical records be delivered in electronic format, (iii) were charged more than the applicable Electronic Rate, (iv) subsequently paid Ciox more than the applicable

Electronic Rate, and (v) were not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 37.

Finally, under the terms of the Settlement, Settlement Subclass B is defined as:

> all Persons who, on one or more occasions during the Class Period, (i) sought copies of medical records from a Texas Clinic(s) or Texas Hospital(s), or had the copies of medical records requested by some other Person pursuant to their authorization, (ii) did not request, in the applicable request letter that the copies of medical records be delivered in electronic format, but otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to their registration for the same, (iii) were charged more than the applicable Electronic Rate, (iv) subsequently paid Ciox more than the applicable Electronic Rate, and (v) were not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 38.

Excluded from the Settlement Class will be the potential members listed on the attached Exhibit A who timely opted-out of the proposed Settlement.

Pursuant to this Court's Notice Order and the Settlement Agreement, Lead Plaintiffs Marc Browne and Teri Adley are the Class Representatives, and Roger L.  Mandel of Jeeves Mandel Law Group, P.C., Scott R. Jeeves and Kyle W. Woodford of The Jeeves Law Group, P.A., and Craig E. Rothburd of Craig E. Rothburd, P.A are designated as Class Counsel. *Id.* ¶ 9; ECF No. 54.

B.    The Payments to Settlement Class Members

The Settlement requires Ciox to pay the settlement costs set forth herein which shall be deemed to be paid on behalf of itself and all Texas Hospitals,[2] Texas Clinics,[3] and the Released

---

[2] "Texas Hospitals" means the health care facilities and/or hospitals, as defined under Chapter 241, Subtitle B, Title 4 of the Health and Safety Code, V.T.C.A., Health & Safety Code §241.001 *et seq.*, for which Ciox contracted and provided release of information services in Texas during the Class Period, identified in the list attached hereto as Exhibit A, and each and all of their respective parent companies, affiliates, subsidiaries, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys, and shareholders.

[3] "Texas Clinics" means the health care facilities and/or physicians, as defined under Chapter 160, Part 9, Title 22 of the Texas Administrative Code, 22 TAC 160.1 *et seq.*, for which Ciox contracted and provided release of information services in Texas during the Class Period, identified in the list attached hereto as Exhibit A, and each and all of their

Parties[4] as consideration under the Agreement to settle the claims set forth in the Complaint. SA IV. Ciox shall pay up to $1,850,000.00 as the Settlement Fund, which will pay for the claims of the Class Members who timely submitted Valid Claims.[5]

Settlement Class Members will have either or both of two different claims based upon what type of entity the records came from: (1) a "Qualifying Hospital Request; or (2) a "Qualifying Clinic Request." A Qualifying Clinic Request means either a Type A Request or a Type B Request by a Person for copies of medical records from a Texas Clinic during the Class Period as follows:

a. Type A Request means: a request by a Person for copies of medical records from a Texas Clinic during the Class Period for which the requestor (i) specifically requested, in the applicable request letter, that the copies of medical records be delivered in electronic format, (ii) was charged more than the applicable Electronic Rate[6], (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

b. Type B Request means: a request by a Person for copies of medical records from a Texas Clinic during the Class Period for which the requestor (i) did not request, in the applicable request letter, that the copies of medical records be delivered in electronic format, but the requestor otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to its registration for the same, (ii) was charged more than the applicable Electronic Rate, (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 31.

A Qualifying Hospital Request means either a Type A Request or a Type B Request by a Person for copies of medical records from a Texas Hospital during the Class Period as follows:

---

respective parent companies, affiliates, subsidiaries, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys, and shareholders.

[4] "Released Parties" means and includes: Ciox, the Texas Clinics, and the Texas Hospitals, and each and all of their respective parent companies, management companies, affiliates, subsidiaries, partners, holding companies, agents, successors, predecessors-in-interest, officers, directors, employees, attorneys and shareholders.

[5] "Valid Claim" means a Proof of Claim that is: (a) fully and truthfully completed, with all of the information in the Proof of Claim identified as "required"; (b) postmarked or electronically submitted on or before the date set forth in the Proof of Claim and/or Class Notice; and, if mailed, (c) sent to the address specified in the Proof of Claim and Settlement Webpage. The Claims Administrator may require reasonable additional information from the Claimant to validate the claim. To have a Valid Claim, the Class Member must not have already been fully paid or fully reimbursed by Ciox, the Texas Hospitals, or the Texas Clinics for the Disputed Fee Amount.

[6] "Clinic Electronic Rate" is set forth in SA ¶14.

a.  Type A Request means: a request by a Person for copies of medical records from a Texas Hospital during the Class Period for which the requestor (i) specifically requested, in the applicable request letter, that the copies of medical records be delivered in electronic format, (ii) was charged more than the applicable Electronic Rate[7], (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

b.  Type B Request means: a request by a Person for copies of medical records from a Texas Hospital during the Class Period for which the requestor (i) did not request, in the applicable request letter, that the copies of medical records be delivered in electronic format, but the requestor otherwise received electronic copies of the medical records via the Ciox eDelivery Portal pursuant to its registration for the same, (ii) was charged more than the applicable Electronic Rate, (iii) subsequently paid Ciox more than the applicable Electronic Rate, and (iv) was not reimbursed by Ciox for the Disputed Fee Amount.

SA IV ¶ 32.

Settlement Subclass A members have Type A Qualifying Hospital and/or Clinic Requests, while Settlement Subclass B members have Type B Qualifying Hospital and/or Clinic Requests. Some Class members may fall into both Subclasses because some of their record requests may have been Type A Requests while others may have been Type B Requests.

The Settlement Fund remaining after deduction of Class Representative service awards, Class Counsel's fees and expenses awarded by the Court and payments of the costs of notice and claims administration shall be used to reimburse the Class Members who timely submitted Valid Claims in an amount equal to (i) One Hundred Percent (100%) of the Disputed Fee Amount (the difference between the charges based on a paper rate and the charges based on an electronic rate) paid by the members of Settlement Subclass A, less the same percentage as the percentage of the Settlement Fund that the Court awards to Class Counsel as the Fee and Expense Award, or (ii) Fifty Percent (50%) of the Disputed Fee Amount paid by the members of Settlement Subclass B, less the same percentage as the percentage of the Class Settlement Fund that the Court awards to Class Counsel as the Fee and Expense Award.  In the event the reimbursements to the Settlement

---

[7] "Hospital Electronic Rate" is set forth in SA ¶24.

Class Members who timely submit Valid Claims exceed the amount of the Settlement Fund remaining to pay Valid Claims after payment of the Fee and Expense Award, the Service Awards and Claims Administrator Fees and Expenses, such reimbursements to the Class Members will be paid on a pro rata basis.

## II.   THE COURT-APPROVED NOTICE WAS DELIVERED IN ACCORDANCE WITH THE NOTICE ORDER AND FULLY SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

On July 26, 2022, the Court granted the Notice Order, ECF No. 54, which approved the form and content of the proposed Notice, approved the notice process, and appointed American Legal Claim Services, LLC, ("American Legal") as Settlement Administrator to distribute the notice in accordance with the notice plan.

As provided by the Settlement Agreement, Ciox provided American Legal with the necessary data for the Settlement Class members. See Declaration of Demetrius Jenkins of American Legal Claim Services, LLC Regarding Due Diligence in Noticing ("American Legal Decl."), ¶ 3, attached hereto as Exhibit B. American Legal then mailed postcard notices directly to Class Members based upon the Ciox provided data and contact information. *Id*. The Notice Program also includes a dedicated settlement website and toll-free telephone line where Class Members had the ability learn more about their rights and options pursuant to the terms of the Settlement. *Id.* ¶¶ 7, 8. The direct mailing of notice to class members, along with publication of notice online, is reasonably calculated to apprise Class Members of the Settlement. *See In re Pool Prod. Distribution Mkt. Antitrust Litig.*, 310 F.R.D. 300, 318 (E.D. La. 2015) (finding email, publication, and online notice to be sufficient).

American initially mailed 38,117 notices on or about August 25, 2022. *Id.* ¶ 4. 4,074 of them were returned. *Id.* ¶ 5. American Legal then searched for new addresses for the returned

notices, and from September 22, 2022, to November 16, 2022, they made a second mailing of 1,748 notices. *Id.* Ultimately, 35,478 postcard notices appear to have been delivered. *Id.* ¶ 6.

The Long Form Notice available on the website defined the Class, described the allegations and pertinent procedural history of this Action, outlined the terms of the proposed Settlement, provided notice of the fairness hearing and how to object to the proposed Settlement, stated the amounts of attorneys' fees and expenses Plaintiffs' Counsel request from the proposed Settlement, and explained how Class Members may obtain additional information. In addition, the Notices clearly and concisely informed Class Members that they could do nothing and be bound by the Settlement; could make a claim by completing and returning the claim form and be bound by the Settlement; object to the Settlement and be bound by it; or exclude themselves by completing the exclusion form and not be bound by the Settlement.

The Settlement website and phone information line became operational on August 25, 2022. *Id.* ¶¶ 7,8. The website received 6,184 unique visitors who, on average viewed 4.16 pages and viewed the site of 2.58 minutes. *Id.* ¶ 7. The page where the Long Form Notice could be downloaded or printed was visited 1,105 times. *Id.* 157 calls were made to the telephone information number. *Id.* ¶ 8. 7,051 claims were made through the online portal and U.S. mail in connection with 6,665 invoices on behalf of 2,654 unique claimants. *Id.* ¶ 9.

Following dissemination of the Court-approved Settlement notice process, and as of deadline of November 23, 2022, and the date of this filing, American Legal received only five requests to be excluded from the proposed Settlement and no objections to any aspect of the Settlement, including Class Counsel's requested attorneys' fees and costs or the Class Representative service awards. American Legal Decl. ¶¶ 10,11. Nor have Class Counsel received any objections to any aspect of the proposed Settlement or any complaint about the terms of the

proposed Settlement from any Settlement Class Member. Declaration of Roger L. Mandel in Support of Final Approval ("Mandel Final Approval Decl.") ¶ 3, Exhibit C hereto. Nor does the Court docket reflect the filing of any objection. *Id.* ¶ 4. Moreover, Class Counsel have not received any communications alerting them to any Settlement Class Member's interest in appearing at the Fairness Hearing or bringing a separate, individual lawsuit on the theories pled in the matter, or received notice of any such filings. *Id.* ¶5.

The actions described above show that the Settlement Class Members' due process rights have been satisfied because the Parties, with the assistance of American Legal, have made reasonable efforts to provide the Settlement Class Members with notice of the proposed Settlement, the Parties have provided the Settlement Class Members with a reasonable period of time to evaluate the proposed Settlement, and the Court-approved Notices contained sufficient information to allow Settlement Class Members to make informed decisions about whether to participate in the proposed settlement and access to sufficient procedures for seeking more information, objecting to the proposed settlement, or excluding themselves from the proposed settlement. The Parties and American legal have fully complied with the Notice Order and the provisions of the Settlement Agreement dealing with Notice.

## III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A.   <u>*Standards Applicable to Class Certification*</u>

Courts have long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and one of the sections of (b). *See Marcus v. J.C. Penney Co.*, 2016 WL 8604331, at *1 (E.D. Tex. Aug. 29, 2016), *report and recommendation adopted in full*, 2017 WL 907996 (E.D. Tex. Mar. 8,

2017) (certifying class in securities fraud action). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As discussed below, the Action satisfies all the factors for certification.

B.    The Settlement Class Meets the Requirements of Rule 23(a)

1.    **Rule 23(a): Numerosity Is Satisfied**

To satisfy Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Based on the number of record requests qualifying for payment under the Settlement and the maximum recoverable damages, it is reasonable to believe that the number of Class members will number in the tens of thousands. Declaration of Roger L. Mandel in Support of Joint Motion to Give Notice of Proposed Class Action Settlement (ECF No. 51-2) ("Mandel Decl.") ¶15. Numerosity is thus easily satisfied. *See, e.g., Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding that class of 100 to 150 satisfies numerosity requirement).

2.    **Rule 23(a)(2): Commonality Is Satisfied**

Rule 23(a)(2) requires that the class members "share at least one question of fact or law in common with each other." "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims." *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). The claims "must depend upon a common contention [that is] of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

350 (2011). The common questions in this case include:

> [1] whether contracts existed between Ciox and the Class;
> [2] whether those contracts incorporated the maximum charges allowed by the statutes;
> [3] whether Ciox breached those contracts by charging for paper copies rather than electronic copies; and
> [4] whether the measure of damages for that breach is the difference between what Ciox actually charged and what it should have charged for electronic copies.

ECF No. 1 at 12. Thus, commonality is easily satisfied.

### 3.  Rule 23(a)(3): The Class Representatives' Claims Are Typical

"Rule 23(a) requires that the named representatives' claims be typical of those of the class." *Langbecker v. Electric Data Systems Corporation,* 476 F.3d 299, 314 (5th Cir. 2007). The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). The test for typicality is not demanding and is satisfied if the representative plaintiff's claims arise out of the same event or course of conduct as the other proposed class members or are based on the same legal theory. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001).

In this Action, Plaintiffs' claims are typical because they all arise from the same  process for formation of contracts via payment of standard-form invoices as the rest of the Class and rely on the same Texas statutes and causes of action as the rest of the Class. Thus, Plaintiffs' claims are typical of the other Class members' claims, as they arise from the same course of events and share the same legal theories. *Welsh v. Navy Federal Credit Union*, 2018 WL 7283639, at *6 (W.D. Tex. Aug. 20, 2018) (finding that "Plaintiffs claims are typical of the claims of the proposed class because all the claims arise out of the same conduct" and "[t]he claims are also based on the same legal theory: breach of contract."); *see also General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge.").

### 4. Rule 23(a)(4): The Class Representatives Are Adequate

The adequacy inquiry can be broken up into three subcategories: (1) "the zeal and competence of the representative[s'] counsel"; (2) "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees"; and (3) the risk of "conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Security Insurance Co.*, 856 F.3d 408, 412 (5th Cir. 2017). To meet the adequacy requirement, "the court must find that class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent class members." *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005).

As to the first "adequacy" subcategory, the competency of proposed class counsel, the named Plaintiffs chose attorneys Roger L. Mandel of Jeeves Mandel Law Group, P.C., Scott Jeeves and Kyle Woodford of The Jeeves Law Group, P.A., and Craig E. Rothburd of Craig E. Rothburd, P.A. As the accompanying declarations demonstrate, proposed Class Counsel have extensive experience successfully prosecuting class actions and other complex cases. Mandel Decl. ¶¶19-22; Declaration of Scott R. Jeeves in Support of Joint Motion to Give Notice of Proposed Class Action Settlement (ECF No. 51-3) ("Jeeves Decl.") ¶4. Proposed Class Counsel have devoted a significant amount of time to this matter, possess the requisite knowledge of the applicable law and experience with complex litigation, and they are willing to commit the resources necessary to prosecute this case on behalf of the named Plaintiffs and the Settlement Class to a successful conclusion. Mandel Decl. ¶¶5, 7, 8 & 19-22. Accordingly, proposed Class Counsel satisfy the requirements of Rule 23(g).[8]

---

[8] In certifying a class, the Court must assess proposed Class Counsel's ability to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Rule 23(g) sets forth criteria that the court must consider including:

As to the second subcategory, Plaintiffs Marc Browne and Teri Adley understand the allegations made in this action and the terms of the Settlement Agreement, as well as their obligations to the proposed Settlement Class, and their commitment to prosecute this action. Mandel Decl. ¶18. Each of them read the Complaint before it was filed; confirmed their claims are based on Ciox's failure to correctly pay for medical record copies, as are the claims of all proposed Settlement Class members; confirmed their understanding of their responsibilities to the proposed class; actively participated in in the litigation through communication with counsel regarding the settlement negotiations and review and approval of the settlement terms; and they retained competent counsel with sufficient resources to prosecute this action to conclusion. *Id.*

Finally, as to the third subcategory, Class Counsel do not believe that the Class Representatives have any interests different from the interests of the rest of the Class that could constitute a conflict of interest. *Id.* Significantly, Class Representative Teri Adley is a member of Settlement Subclass A because her request letter specifically requested production of records in electronic format. Complaint (ECF 1) ¶¶ 27 & 28 and Exhibit A thereto (ECF 1-2), the letter. On the other hand, because his request letter did not specifically request production of records in electronic format, Class Representative Marc Browne is a member of Settlement Subclass B. *Id.* ¶¶ 29 & 30 and Exhibit E thereto (ECF 1-6), the letter. Thus, the Class Representatives represented both subclasses. Mandel Decl. ¶18, For these reasons, the "adequacy" prong is satisfied.

---

(i)      the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims assisted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(A).

C.    <u>The Settlement Class Meets the Requirements of Rule 23(b)(3)</u>

**1. Common Questions of Law or Fact Predominate**

The Court may certify a class under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The standard for establishing that common issues "predominate" is less stringent when certification is sought for the purpose of settlement, rather than litigation. In such cases, "the existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3) concerns . . . a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *In re Deepwater Horizon*, 739 F.3d at 818 (citing *Amchem*, 521 U.S. at 620). Instead, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1058 (S.D. Tex. 2012) (quoting *Amchem*, 521 U.S. at 623). "So long as there is sufficient commonality to establish that the class is generally cohesive, the propriety of a settlement need not depend on satisfaction of a `predominance' requirement." *Id.* (*citing* Aggregate Litigation § 3.06 cmt. A). *See also Welsh*, 2018 WL 7283639, at *7 (same).

Here, the Class is sufficiently cohesive to warrant a class action. All Class members faced the same issues. Did their contracts incorporate the statutory maximum allowable charges even though the contracts called for them to pay higher amounts? If so, did Ciox breach the contracts by collecting more than the statutory maximums? Alternatively, did the contract amounts in excess of the statutory maximums make the contracts illegal and void from their inception? If so, did the

15

difference between what Ciox collected and the maximum charged constitute money which in equity and good conscience should be returned to Class members pursuant to the doctrine of money had and received?

Finally, Settlement Subclass B members faced on additional issue common to them: did Ciox violate the statutes by charging them paper rates when electronically delivering copies of the records even though their request letters did not specify the copies should be delivered in electronic format? These common liability issues predominate over any individual issues that could arise, such as the need to calculate Class members' damages individually. The Class's claims would rise or fall based on the same common issues.

### 2. A Class Action Is a Superior Method of Adjudication

"Superiority" requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," based upon factors including the interests of the members of the class in individually controlling the prosecution, the extent and nature of any litigation concerning the controversy already commenced by members of the class, the desirability of concentrating the litigation in a particular forum, and the management difficulties likely to be encountered. Fed. R. Civ. P. 23(b)(3). "[T]he existence of a settlement agreement allows the district court to dispense altogether with considering at least one of the Rule 23(b)(3) concerns: 'the likely difficulties in managing a class action.'" *In re Deepwater Horizon*, 739 F.3d at 818.

The "superiority" prong is readily met here, because "the resolution of thousands of claims in one action" (as will be accomplished here) "is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication." *See In re Chinese-Manufactured Drywall Products Liability Litigation*, 424 F. Supp. 3d 456, 484 (E.D. La. 2020). That is particularly true.as

here, where individual class members have relatively small individual damages.[9] *See In re Heartland*, 851 F. Supp. 2d at 1060 ("The most compelling rationale for finding superiority in a class action" is 'the existence of a negative value suit.') (*quoting Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)); *see also Welsh*, 2018 WL 7283639, at *7 ("Rule 23(b)(3) is the best method of adjudication for situations like these in which the potential recovery is typically so small that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation.") (quotations omitted). "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617 (citation omitted). As such, Rule 23(b)(3) is satisfied.

## IV.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23(e)

### A.   *Standard for Granting Final Approval of the Settlement*

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class wide basis. Approval of a proposed settlement is a matter within the sound discretion of the district court. *See Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004). This discretion should be exercised in the context of a public policy which strongly favors the pretrial settlement of lawsuits. *See Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977) ("[settlements] will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits") (internal quotation omitted). With respect to class actions, the Fifth Circuit has held that "there is an overriding public interest in favor of settlement" because such suits "have a well-deserved reputation as being most complex." *Cotton v. Hinton*,

---

[9] For example, Plaintiff Adley's damages are only $52.50. Complaint, ECF 1, ¶28. Plaintiff Browne's damages are only $67.63. *Id.* ¶30.

559 F.2d 1326, 1331 (5th Cir. 1977). This is because settlement favorably reduces "[t]he time and cost of further litigation[.]" *Aron v. Crestwood Midstream Partners LP*, 2016 U.S. Dist. LEXIS 152427, at *10-11 (S.D. Tex. 2016).

When a settlement, such as this one, "is reached as the result of arms-length negotiations between competent counsel on both sides, the settlement is presumptively valid and ordinarily may be overcome only if its provisions are not within reasonable bounds or are illegal, unconstitutional or against public policy." *City of Omaha Police & Fire Ret. Sys. v. LHC Group*, 2015 WL 965693, *6 (W.D. La. 2015). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 425 (S.D. Tex. 1999) (quoting *Cotton*, 559 F.2d at 1330); *see also Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) ("[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties.").

When considering final approval, courts are required to analyze the following factors of Rule 23(e)(2) to determine if the proposed settlement is fair, reasonable, and adequate:

A. have the class representatives and class counsel adequately represented the class;
B. was the proposed settlement negotiated at arm's length;
C. is the relief provided for the class adequate, taking into account:
    i.   the costs, risks, and delay of trial and appeal;
    ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    iii. the terms of any proposed award of attorneys' fees, including timing of payment;
    iv.  any agreement required to be identified under Rule 23(e)(3); and
D. does the proposal treat class members equitable relative to each other.

The four Rule 23(e)(2) factors are intended to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed, R. Civ. P. 23, Advisory Committee Notes to 2018 Amendments. Therefore, factors (A) and (B) identify procedural considerations, while factors (C) and (D) focus on the substantive

review of the settlement. *Id*. However, these factors are not intended to "displace" other factors previously adopted by the courts. *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 485 (E.D. La. 2020); *see also Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, *3 (S.D. Tex. 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's *Reed* factors").

The Court should also consider the Fifth Circuit's long-standing approval factors (the *Reed* factors), which complement the Rule 23(e)(2) factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The proposed Settlement satisfies each of the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Reed* factors.

B.   The Settlement Satisfies Both the Procedural and Substantive Requirements of Rule 23(e), as Well as the Related *Reed* Factors

1.   **"Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)(A)-(B) and *Reed*, Because Lead Plaintiffs and Class Counsel Adequately Represented the Class and the Settlement was Negotiated at Arm's Length**

The first two factors of Rule 23(e)(2)—i.e., the adequacy of the Class's representation, and whether the settlement was the product of arm's length negotiations—"look to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes to 2018 Amendments. Plaintiffs' and Lead Counsel's exemplary conduct during the litigation, as well as the negotiating process, establishes that the Settlement was a procedurally fair resolution under Rule 23(e)(2).

*First*, Lead Plaintiffs have adequately represented the Class through more than three years

of hard-fought settlement negotiations. Lead Plaintiffs demonstrated their adequacy by moving for appointment as Class Representatives so that they could seek to maximize the Class's recovery. *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, *5 (C.D. Cal. 2019) (granting approval because "[w]here plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between" representatives and the class). Lead Plaintiffs also adequately represented the Class by selecting counsel who are highly experienced in litigating consumer class actions. Class Counsel fully understood the strengths and weaknesses of the claims and defenses of this Action and achieved the most beneficial result for the Class. *See* Mandel Decl., ¶¶ 19-22; *In re Seitel Sec. Litig.,* 245 F.R.D. 263, 273 (S.D. Tex. 2007) (counsel's past litigation experience and expertise supported adequacy).[10]

Class Counsel also adequately protected the Class's interest by, *inter alia*, engaging in substantial and protracted informal discovery, including the review and analysis of spreadsheet data regarding over 3,000,0000 records requests produced by Ciox and obtaining from Ciox detailed explanations of that data. Likewise, Class Counsel further protected the Class's interest by reviewing and participating in the following: (i) publicly available information, including press releases, news articles, and other public statements issued by or concerning Ciox; (ii) research reports issued by financial and industry analysts concerning Ciox; (iii) other publicly available information and data concerning Ciox; (iv) documents obtained from plaintiff law firms showing the charges they paid to Ciox; (v) Ciox's responses to Rule 33 interrogatories; and (vi) numerous data analysis exchanges between the Parties. *See* Mandel Decl. ¶¶ 11,13. Class Counsel have

---

[10] *See also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) (approving settlement given counsel's "significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Hays v. Easton Grp. Attorneys, LLC*, 2019 WL 427331, at *9 (M.D. La. 2019) (settlement approved where "negotiated by experienced, informed counsel . . . with substantial experience in litigating complex class actions" and where lead plaintiff was "familiar with the factual and legal issues").

demonstrated that "they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses[.]" *In re Heartland*, 851 F. Supp. 2d at 1065; *see also Reed*, 703 F.2d at 172 (third *Reed* factor weighs "the stage of the proceedings and the amount of discovery completed"). Therefore, Counsel's conduct adequately protected the Class and supports Settlement approval. *Id.*[11]

**Second**, the parties' settlement negotiations were conducted at arm's length by experienced counsel and hard fought. Thus, Class Counsel's' negotiation efforts weigh in favor of settlement approval. *Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *5 (E.D. La. 2020) ("hard-fought negotiation between experienced counsel" resulted in a fair, non-collusive settlement). Here, the Parties negotiated the settlement terms in the context of months of Ciox providing data, Class Counsel analyzing it, and the parties discussing and debating it. Mandel Decl. ¶ 11. Class Counsel negotiated the core settlement terms with Ciox over many more months, exchanging multiple proposals. *Id.* ¶ 13.

They did not negotiate the Class Representative Service Awards and the Fee and Expense Award for Class Counsel until after the rest of the terms of the Settlement had been agreed upon. *Id.* ¶ 14. Then, it took many more months for the parties to: (1) negotiate and draft the Settlement Agreement, including the Notice Plan, (2) negotiate and draft all of the related notice documents including the Long Form Notice, the Postcard Notice, and the Proof of Claim Form, (3) take bids for the position of and choose the Settlement Administrator, and then (4) further fine tune the Notice Plan and related notice documents with the help of the Settlement Administrator. *Id.* ¶¶ 14-17.

---

[11] *Melby v. America's MHT, Inc.*, 2018 WL 10399004, *9 (N.D. Tex. 2018) (approval granted where it was obvious class attorneys were not "groping in darkness" and that the settlement was not "the product of uneducated guesswork")

**2. The Settlement's Terms Are Adequate and Equitable Satisfying the "Substantive" Requirements of Rule 23(e)(2)(C)-(D) and *Reed***

When evaluating the proposed Settlement's substantive reasonableness, the Court must consider Rule 23(e)(2)(e) and 23(e)(2)(D) which ask, respectively, whether "the relief provided for the class is adequate" and if the proposed Settlement "treats class members equitably relative to each other." Here, the Settlement provides a highly favorable result for the Class, given the considerable risks posed by further litigation.

**i.    The Settlement Amount Provides "Adequate" Relief Considering the Costs, Risks, and Delay of Trial and Appeal**

A key factor in deciding whether the Court should grant final approval is "whether the settlement's terms fall within a reasonable range, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *11 (S.D. Tex. 2015). The second, fourth, and fifth *Reed* factors, respectively, consider "the complexity, expense, and likely duration of the litigation," the "probability of plaintiffs' success on the merits," and "the range of possible recovery." *Reed*, 703 F.2d at 172. To evaluate the probability of success "the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287. Substantive adequacy, whether assessed through Rule 23(e)(2)(e) or the *Reed* factors, "strongly favors approving [a] proposed [] settlement agreement." *Odonnell v. Harris County*, 2019 WL 6219933, at *13 (S.D. Tex. 2019).

***First,*** there is no question that continued class action litigation is costly, risky, and lengthy. The Settlement avoids the risks of prolonged and uncertain litigation, achieves a substantial recovery, and avoids the considerable expenses associated with litigating class certification, summary judgment, trial, and a lengthy appeals process. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high

costs of time and money on the parties, the reasonableness of approving a mutually agreeable settlement is strengthened."). Certainly, the experience of Mr. Jeeves in his Florida case against HealthPort (Ciox) demonstrates a high likelihood that, absent the Settlement, this case would have been litigated over many years at tremendous expense. Jeeves Decl. ¶¶ 5-8; Mandel Decl. ¶ 3. That case took over eight years to conclude, required two trips to the court of appeals, and required the expenditure of a lodestar exceeding $1 million and out of pocket expenses of approximately $130,000 by plaintiffs' counsel. Jeeves Decl. ¶ 7.[12] Before HealthPort (Ciox) finally settled, Mr. Jeeves had to obtain the following from the court:  granting of class certification, granting of plaintiffs' motion for partial summary judgment, denial of HealthPort's (Ciox's) motion for summary judgment, and granting of a permanently injunction prohibiting HealthPort (Ciox) from charging patients more for medical records than allowed under Florida law. *Id*.

**Second**, the Settlement provides for up to $1,850,00.00 to be paid by Ciox. Simply put, the Settlement Amount represents an excellent recovery. Class Counsel, based on data provided to Plaintiffs by Ciox as part of informal discovery during settlement negotiations, learned that the maximum amount of damages the Class could potentially recover in this case is approximately $2,000.000. Mandel Decl. ¶ 24. Thus, by requiring Ciox to pay up to $1.85 million, the Settlement represents a recovery of approximately 92.5% of the potentially recoverable damages. *Id*. ¶¶ 24-26. This is a **significant recovery** far higher than the percentage of potential damages typically recovered by class action settlements[13], and it eliminates the risk of non-recovery should litigation continue. *Id*.

---

[12] *Allen v. HealthPort Technologies*,  LLC, n/k/a CIOX Health, LLC, Case No. 12-CA-012154-K (Fla. 13th Cir.).

[13] *See, e.g., In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the best-case scenario potential recovery" deemed reasonable); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

### ii.    Other Rule 23(e)(2)(e) Factors Support Final Approval

Under Rule 23(e)(2)(e), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including time of payment," and "any agreement required to be identified under Rule 23(e)(3)." Each of these factors supports the Settlement's approval or is neutral; thus, they do not suggest any basis for concluding the Settlement is inadequate.

Under the Settlement, American Legal has objective criteria to determine what claims were timely submitted and eligible for payments and access to the necessary data from Ciox to determine eligibility. American Legal Decl., ¶ 3. Under the Settlement Agreement (Section V(H)), it has 60 days after the expiration of the Claims Period (November 23, 2022) to prepare a Claims Report providing notice of those claims submitted for a Settlement Payment as well as those denied as invalid or otherwise ineligible for a Settlement Payment and stating the reasons(s) for denial. American Legal anticipates no problems meeting this deadline. *Id.* ¶ 9.

Once the Parties and/or the Court have resolved any disputes over denied claims and the Court has determined the amount of the fees and expenses to be paid to Class counsel,  the amount of the Service Awards to be paid to the Class Representatives and totaled the cost of settlement administration, it will be a simple matter for the Settlement Administrator to calculate the amount payable on each Valid Claim pursuant to Section IV(B) of the Settlement Agreement. *Id.* Section V(I) gives the Settlement Administrator multiple options to pay Settlement Class members electronically in addition to paying by check. Given that the Proof of Claim forms will provide it with current address information for the claimant's as well as their choice of payment form and the information necessary to accomplish same, the Settlement Administrator expects a high rate of

success in delivering payment. *Id*. Thus, the relief provided the Settlement Class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Class Counsel previously filed their fee motion with the Court (ECF. No. 56) explaining in detail why their requested fees and expenses are reasonable in the context of the Settlement. For the reasons set forth therein, the relief provided for the Settlement Class is adequate in light of "the terms of any proposed award of attorneys' fees, including time of payment" (30 days after entry of the Final Judgment).

There are no "agreement[s] required to be identified under Rule 23(e)(3)," so this factor is neutral.

### iii.    The Settlement Terms are Equitable

Rule 23(e)(2)(D) requires that the proposed Settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). That is the case here.

The Settlement Agreement provides for Settlement Subclass A members to recover 100% of the Disputed Fee Amount (alleged overcharge) less attorneys' fees while Settlement Subclass B members will recover 50% of the Disputed Fee Amount less attorneys' fees. SA IV(A)(4). The difference between the two subclasses is that Settlement Subclass A members specifically requested electronic delivery of the requested copies while Settlement Subclass B members did not. SA III(B).

This difference has great legal significance, because both the statute governing hospitals and the regulation governing doctors and doctor clinics contain language strongly supporting that the lower electronic rates need only be charged if the request letter expressly requests electronic delivery, even if the copies of the records were in fact delivered electronically. Mandel Decl. ¶¶ 9-

10. Texas Health and Safety Code § 241.154(b)(3) requires hospitals to charge the lower electronic rates if "the requested records are provided on a digital or other electronic medium *and the requesting party requests delivery in a digital or electron medium, including electronic mail ...."* Texas Administrative Code § 165.2(e)(2)(A), 22 T.A.C. § § 165.2(e)(2)(A), provides that "the physician responding *to a request for such information to be provided in electronic format* shall be entitled to a reasonable, cost-based fee for providing the records in electronic format" not to exceed the rate in subsection (B). *Id.*

Initially, Plaintiffs note that the 100% recovery by Settlement Subclass A members represents a great result given the risk they would recover nothing based on the arguments made by Ciox in the Motion to Dismiss. Mandel Decl. ¶ 26. Further, recovery of 50% by Settlement Subclass B members represents a great result given the language quoted above which seems to expressly allow charging of paper rates even for electronic copies of the records if the requesting letter did not specify delivery in electronic format. *Id.* ¶ 10. In the face of that language, Lead Plaintiffs would have had to make a complicated statutory interpretation argument based on statutory structure and apparent legislative intent. *Id.* Class Counsel believe their likelihood of succeeding on that argument was considerably less than 50%, making the 50% recovery by Settlement Subclass B members an excellent result, especially given that losing the argument would have resulted in zero recovery for those Settlement Class members.

Accordingly, this factor supports approval of the Settlement.

### 3. The Opinions of Class Counsel, Lead Plaintiffs, and the Class Support Approval

The final *Reed* factor to consider is "the opinions of the class counsel, class representatives, and absent class members" in determining the propriety of a settlement. *Reed*, 703 F.2d at 172. In determining if a settlement is in the best interest of the class, "[s]ignificant weight is given to the

opinion of class counsel[.]" *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, *3 (E.D. Tex. 2017). Extensive investigation has made Class Counsel a reliable source of information for the Court to rely on when deciding on approval of the Settlement. *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007) ("Counsel are the Court's main source of information about the settlement . . . and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."). The Court should also consider Lead Counsel's considerable skill and experience in class-action litigations when evaluating the proposed Settlement. *See Schwartz*, 2005 WL 3148350 at *21 ("where…Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case."). Here, Class Counsel have extensive experience successfully prosecuting class actions and other complex cases. Mandel Decl. ¶¶ 19-22; Jeeves Decl. ¶ 4. Class Counsel believes the Settlement merits approval and Plaintiffs also support the proposed Settlement. Thus, this factor weighs in favor of final approval.

Likewise, the opinion of the Class as expressed through the presence or absence of objections should be given significant weight by the Court. *Quintanilla v. A & R Demolition Inc.*, 2008 WL 9410399, at *5 (S.D. Tex. May 7, 2008) ("The court should ... consider the reaction of the class to the settlement," and "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement"); *Schwartz*, 2005 WL 3148350, at *22-23 (finding, where there were eight objections, that "the overwhelming response of absent Class Members overall ... strongly supports approval of the settlement"); *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *14 (N.D. Tex. Aug. 4, 2011) (where 30 out of 2,000 class members opted out of a settlement, the court found that "[t]he extremely small number of opt-outs suggests a favorable opinion by the absent class members"). Here, despite 35,478 notices having been delivered to

27

Potential Settlement Class members, not even one objected to the Settlement or the requested attorneys' fees, which indicates overwhelming approval by the Settlement Class and strongly supports approval of the Settlement. *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 938 (E.D. La. 2012) ("The low objections and opt-out rates are evidence of the Settlement's fairness."), *aff'd sub nom., In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014).

For all of the foregoing reasons, Lead Plaintiffs and Ciox request that the Court approve the Settlement by finding that its terms are fair, reasonable, and adequate according to the requirements of Rule 23(e) and the *Reed* factors.

## V.    CONCLUSION

The Parties' proposed Settlement was reached only after significant discovery and arm's-length negotiations by experienced consumer class action lawyers. It provides a fair result for the Settlement Class Members and has received overwhelming support. The Parties have thoroughly investigated the issues of law and fact presented in this case and believe the proposed Settlement is preferable to the continued litigation of Plaintiffs' claims. Nothing in the Parties' negotiations, or in the Settlement Agreement, provides any basis for doubting the fairness of their compromise. For the reasons detailed here, and in the accompanying documents, the Parties respectfully submit that the Parties' proposed Settlement is reasonable and deserving of final approval through entry of the proposed Order Approving Settlement and Final Judgment.

Dated: December 8, 2022.               Respectfully submitted,

/s/*Roger L. Mandel*
Roger L. Mandel (admitted *pro hac vice*)
rmandel@jeevesmandellawgroup.com
**JEEVES MANDEL LAW GROUP, P.C.**
2833 Crockett St
Suite 135
Fort Worth, TX 76107
T: 214-253-8300

Scott R. Jeeves (admitted *pro hac vice*)
**JEEVES LAW GROUP, P.A.**
2132 Central Avenue
St. Petersburg, Florida 33712
T. (727) 894-2929
sjeeves@jeeveslawgroup.com
khill@jeeveslawgroup.com
kwoodford@jeeveslawgroup.com

Craig E. Rothbard (admitted *pro hac vice*)
**CRAIG E. ROTHBURD, P.A.**
320 W. Kennedy Blvd., Suite 700
Tampa, Florida 33606
T. (813) 251-8800
craig@rothburdpa.com
maria@rothburdpa.com

*Counsel for Plaintiffs and the Class*


/s/ Tricia W. Macaluso
Tricia W. Macaluso
Texas State Bar No. 24013773
**Bryan Cave Leighton Paisner LLP**
2200 Ross Avenue, Suite 4200W
Dallas, Texas 75201
Tel: (214) 721-8000
Fax: (214) 721-8100
tricia.macaluso@bclplaw.com

*Attorneys for Defendant Ciox Health, LLC*

**<u>CERTIFICATE OF CONFERENCE</u>**

Pursuant to Local Rule CV-7(h), counsel for the undersigned confirms they have complied with the meet and confer requirement and Ciox does not oppose this motion and files it jointly.

/s/*Roger L. Mandel*_____
Roger L. Mandel

**<u>CERTIFICATE OF SERVICE</u>**

This document was filed December 8, 2022, on the Court's ECF System, through which it will be served on all counsel of record.

/s/*Roger L. Mandel*_____
Roger L. Mandel